# Nelson v. Kelly.

*Bill in Equity for Injunction of Action at Law, and Sale of Lands for Equitable Division.*

1. *Equitable estoppel; advancing money to third person, at instance of owner of land.*—If the owner of land which has been sold for taxes, being in possession, and threatened with suit by the purchaser, induces a third person to advance the money necessary to redeem, taking a conveyance from the purchaser as security, he is estopped in equity, on subsequent discovery that the tax-sale was a nullity, from setting up his legal title against the person who advanced the money on the faith of his representations; nor can he be heard to say that the person so advancing the money was guilty of negligence in failing to examine into the validity of the tax-sale.

2. *Same.*—If it was agreed between the parties, also, that the title to the property should vest absolutely in the person so advancing the money, unless it was refunded to him within a specified period, the court will not enforce this stipulation, but will treat the transaction as in the nature of a mortgage, affording him protection to the extent of the money advanced, with interest, but allowing the owner to redeem after the appointed day.

3. *Same; indefinite stipulation for erection of building; account for rents.*—If there was a further stipulation, that the person advancing the money might erect an office for business purposes on a part of the lot, and that it might remain thereon so long as he desired; the stipulation for its continuance being too indefinite and uncertain to be enforced, he can not claim to be reimbursed for the cost of erecting the building, except in exoneration of his liabilty for rents on the statement of the account.

4. *Same; extent of relief in equity.*—The jurisdiction of the court having attached, under a bill which sought to enforce against two of several tenants in common an equitable estoppel in favor of complainant for moneys advanced by him, at their instance, in redeeming from a tax-sale which was supposed to be valid, and to enjoin an action of ejectment brought against him in the names of all the tenants in common; his right to this relief being established, the court will proceed, under proper allegations and proof, to decree a sale of the land for equitable division among the several tenants in common, allotting to each his share of the proceeds, and refunding to complainant the amount due him out of the shares of the tenants for whom he advanced the money.

[Nelson v. Kelly.]

APPEAL from the City Court of Decatur, in equity.

Heard before the Hon. WM. H. SIMPSON.

The bill in this case was filed on the 3d January, 1890, by Geo. A. Nelson, against Mary and Edith Kelly, their brothers and sisters, and sought (1) to enjoin an action of ejectment, which had been brought against him in the names of all the defendants, to recover the possesion of a small lot, or strip of land in Decatur, on which he had erected an office for business purposes; (2) to divest out of the said Mary and Edith their respective interests in the town lot of which said strip was a portion, and have it vested in him by the decree of the court; (3) to have the property sold for partition, or equitable division, between himself and the other defendants as tenants in common; and (4) for other and further relief under the general prayer. On final hearing on pleadings and proof, the City Court dismissed the bill, and its decree is here assigned as error.

E. W. GODBEY, for appellant, cited *Brooks v. Martin*, 43 Ala. 362; *McCravey v. Remson*, 19 Ala. 430; *Hendricks v. Kelly*, 64 Ala. 391; *Humphreys v. Burleson*, 72 Ala. 1; *Franklin v. Pollard Mill Co.*, 88 Ala. 318; *Markham v. O'Connor*, 21 Amer. Rep. 249; 46 Amer. Rep. 137; 85 N. Y. 394; 73 N. C. 8; 75 Mo. 503; 7 Amer. & E. Encyc. Law, 12.

WERT & SPEAKE, *contra*, cited *Insurance Co. v. Savings Bank*, 63 Ala. 585; *Townsend v. Cowles*, 31 Ala. 428; *Crown v. Carriger*, 66 Ala. 590; Bigelow on Estoppel, 572-3.

CLOPTON, J.—Appellant seeks by the bill to enjoin an action of ejectment, brought by the defendants to recover possession of the lot in controversy, to divest title out of two of the defendants, Mary and Edith Kelly, and invest the same in him, and for a sale of the premises for partition between him and the other defendants. There is also a prayer for general relief. As the bill only seeks affirmative relief against Mary and Edith Kelly, and as the other defendants do not contest complainant's right to relief, when we hereafter speak of defendants, we refer only to Mary and Edith Kelly. The case made by the bill is: The lot was assessed for taxes in 1873 as the property of Fink Kelly, a brother of the defendants, who died intestate. The taxes being unpaid, it was sold in May, 1874, and purchased by B. F. Ponder, to whom the judge of probate made a deed, under the statute, March 24, 1879. About a month thereafter, Ponder sold and conveyed the lot to H. S. Freeman. Defendants being in possession of

the lot after the death of Fink Kelly, Freeman pressed them for the payment of the amount which he had expended in the purchase of the lot, or for possession of the same. Defendants, not disputing his right to the possession, or to re-imbursement of the sum expended by him, and apprehending that he would eject them, endeavored to obtain from several persons the money necessary to pay Freeman. Failing to do so, they applied in January, 1885, to complainant to advance the money, which he did, taking from Freeman a conveyance to the lot. The arrangement, or agreement under which this was done, is thus averred in the bill : " Such being the state of affairs, and not being able to induce any one else to come to their relief, the said defendants, Mary and Edith, in January, 1885, applied to your orator for money to pay H. S. Freeman his claim of one hundred and twenty dollars, under and by virtue of said Freeman's tax-deed from Ponder to the aforesaid premises ; and as an inducement to your orator, the said Mary and Edith represented to your orator that they were the sole heirs to said property, that said Freeman had threatened to eject them from said property, unless said sum of money should be immediately forthcoming, and that they feared that he would make good his threat to do so; that their attorney, S. T. Wert, had advised them that Freeman must have either the said lot, or said sum of money (one hundred and twenty dollars); and then and there promised, in consideration that your orator would buy said Freeman's claim and said property, and permit them, the said Mary and Edith, to remain on said property and cultivate the same, that your orator might erect an office thereon, and use so much of the said premises as he might require (your orator was then and is now engaged in the real estate business at Decatur); and they further promised that, if your orator would buy said Freeman's claim against said lot, they would during the current year refund to him said sum of money, and would offer no objection to any office your orator might build remaining thereon so long as your orator might desire, and that unless they complied with their promise to refund said sum of money in manner and form as stipulated, then the entire lot, as occupied by them, should become and forever remain the property of your orator." The bill further alleges that complainant, relying upon the representations, inducements and promises of the defendants, and being ignorant of the state of the title, purchased the lot from Freeman, without investigation of his claim or title, and received a conveyance thereto, at the request of the defendants, erected an office building thereon, entered into possession thereof, and occupied the same without objection by the defen-

dants. The answer of the defendants, which was sworn to, denies the material allegations of the bill, and avers that defendants always denied Freeman's right to the property, that they told complainant that he had no right thereto, and never consented to pay him anything.

An examination and comparison of the testimony of the several witnesses *pro* and *con*, satisfactorily shows that the evidence supports the substantial averments of the bill. Complainant testifies to the request, inducements and agreement, under which he advanced the money to Freeman, and took the conveyance from him ; and he is corroborated by the testimony of several witnesses, who testify to the admissions and declarations of defendants, some of whom also prove that defendants applied to them to furnish the money with which to pay Freeman, and one of them, Edwards, referred defendants to complainant, who would probably buy the lot for 'them. Complainant's testimony as to the arrangement is contradicted only by the defendants. In their examination as witnesses, they contradict and disprove material denials of their answer. Edith testifies, that she never denied Freeman's claim to the lot, that she told Mary to get the money and pay him, and she would help her all she could ; and Mary testifies, that she went to Birmingham to work to pay Freeman what she owed him, thinking it was her duty. The denial of the answer that Freeman ever pressed them for the money is not only contradicted by Freeman and other witnesses, but Edith also states that he told them that they would have to pay or get out, and further that they promised to pay complainant the money he paid Freeman. Defendants do not undertake to deny the testimony of the other witnesses as to their admissions and declarations, and efforts to induce others to furnish the money to pay Freeman's claim. The contradictions of their sworn answer by their evidence, and the conflicts in their respective testimony, greatly impair their credibility, and disentitle their evidence to consideration. We do not consider the evidence of defendants to the effect that complainant advanced the money to pay Freeman's claim under an agreement for future unlawful cohabitation with one of the defendants, the same having been excluded.

The conclusion being that the weight of the evidence is in favor of the truth of the averments of the bill, the question is, do the facts create an equitable estoppel, precluding defendants from asserting against complainant their legal title and right to possession, without repaying the amount expended by him ? The rule is well settled, that where one acts on representations or admissions of the existence of certain facts in-

[Nelson v. Kelly.]

tentionally and deliberately made, they become conclusive, and operate as an estoppel on the party making them, between him and the person whose conduct he has influenced, if loss. must ensue from a denial of their truth. If one, having the. title to land, induces another to purchase it, or to acquire an interest therein, from one who has no title or claim, by his. representations or admissions, whether in words or by conduct, that such person is the owner, or has authority to control it, he will be estopped to deny such ownership or authority, against the person whom he has thus induced to make such purchase, or acquire such interest.—7 Amer. & Eng. Encyc. of Law, 18. If intentionally and deliberately made, it is immaterial that the representations may have been made innocently and inadvertently; they become conclusive, if the party to whom made has been induced to act upon them, and must sustain injury, unless they are allowed the full operation they could have had if true.—*McCravey v. Remson*, 19 Ala. 430; *Hendricks v. Kelly*, 64 Ala. 388. In *Horn v. Cole*, 57 N. H. 287; s. c., 12 Amer. Rep. 111, it is said: "In equity, the doctrine of estoppel is not limited to cases in which there was an intention to deceive. The cases are numerous, where the party who was estopped by his declarations or his conduct to set up his legal title, was ignorant of it at the time, and could have had no intention to deceive by concealing his title; yet, if the circumstances show that he ought to have informed himself, it has been held to be contrary to equity and good conscience to set up his legal title, though he was ignorant of it when he made the representations." The omission to assert a right, when the result of ignorance, or the mere expression of an opinion, when no intentional misrepresentation is imputable, will not operate as an estoppel. But, in this case, there was more than the mere omission or expression of opinion—an affirmative recognition and admission in fact of the validity of Freeman's claim, and as paramount to the title of defendants

The averments of the bill show that defendants had the legal title, that the tax-sale was void, and that Freeman had no title to, or interest in, or lien upon the lot. Of this defendants may have been ignorant, but, under the circumstances, it was their duty to have informed themselves of the invalidity of the sale, and the character of Freeman's claim. They could have disregarded the tax-sale altogether, and repudiated the conveyance of Ponder to Freeman, as a valid transfer of the right to the property, or as conferring on him a superior right to be reimbursed the amount he expended in his purchase from Ponder. Forbearing to do so, they recognized and ad-

mitted the validity of the sale, and of Freeman's right, and by such and conduct induced complainant to pay Freeman the amount claimed by him, and take from him a conveyance to the property. They will not now be permitted to assert its invalidity against complainant.—*Kirk v. Hamilton*, 102 U. S. 68 ; *Powers v. Harris*, 68 Ala. 409; *Rice v. Bunce*, 49 Mo. 231; s. c., 8 Amer. Rep. 139.

Neither was it the fault of complainant, if, believing their representations, he acted on the inducement held out by them, though the means of information of the true state of the title may have been accessible. He had the right to rely on the declarations and admission of defendants, and to presume that they had informed themselves of the validity of the tax-sale and of Freeman's claim. As said in *Humphries v. Burleson*, 72 Ala. 1, it would add to the wickedness of the deception, if defendants were permitted to reproach complainant with fault, negligence or folly in trusting and believing them. A clear and positive representation of fact may be acted upon, though the person to whom it was made had ample time for ascertaining the truth.—Bigelow on Estoppel, 608. Complainant having been induced to purchase the property from Freeman by the declarations, admissions and request of defendants, for their benefit, and having erected a building thereon in pursuance of the agreement, without objection, they are precluded from asserting their legal title to defeat his right to be refunded the amount expended by him.

What then is the extent of the estoppel ? Notwithstanding, by the terms of the contract, the lot was to become the absolute property of the complainant, in case of default in repayment of the sum advanced during the current year, the requirements of equity do not extend so far. It may be said generally, that when a person, having the legal or equitable title to property, procures another to make an advance upon it and take a conveyance, either from the debtor or another, under an agreement that he shall have the property upon repaying the money advanced, the transaction will, in equity, constitute a mortgage. In such case, the party making the advance acquires title to be held as security.—*Parmer v. Parmer*, 88 Ala. 545. As complainant acquired no title, interest or estate, legal or equitable, by the mere operation of the conveyance from Freeman, who had none to convey, the transaction can not be regarded strictly a mortgage. Nevertheless, by the co-operative effect of the conveyance and the inducement and agreement under which it was procured, he acquired a claim or right to hold the conveyance as security, which the defendants will not be permitted to defeat by the assertion of their

legal title. Such transaction so far partakes of the nature of an equitable lien or mortgage, that equity will not specifically enforce the stipulation that the lot shall become the absolute property of complainant, but will allow defendants the right to redeem. In such case, the court will observe and apply, by analogy, the principle, that a mortgage being an instrument of security, the equity of redemption can not be waived or abandoned by any cotemporaneous stipulation of the parties. *Peugh v. Davis*, 96 U. S. 332; *Fields v. Helms*, 82 Ala. 449.

The maintenance of good faith is the principle on which the doctrine of estoppel *in pais* rests, and ordinarily should not be extended beyond this necessity and duty. The extent of complainant's equity is re-imbursement for the loss or injury sustained—to be refunded the amount expended by him. This must not be understood to include the expenses of erecting the office building on the lot. The bill contains no allegation that by the agreement complainant has the right to remove the building, and the stipulation that the building could remain and be occupied by complainant so long as he might desire, is too indefinite and uncertain to be enforced.—*Erwin v. Erwin*, 25 Ala. 236. On the bill as framed, no relief can be granted in respect to the improvements, except to be relieved from accounting for rents.

An estoppel resting in parol can not affect the title to land in a court of law, and can not be set up to defeat an action of ejectment brought by the party having the legal title; but in equity such estoppel may bind the estate, and may be enforced in a court of chancery, which has power to enjoin the suit at law.—*Allen v. Kellum*, 69 Ala. 442; *McPherson v. Walters*, 16 Ala. 714. The court, having rightfully taken jurisdiction for the purpose of enjoining the action of ejectment, may proceed, upon the allegations and proof, to sell the lot for partition between the tenants in common, so as to allot to each his share of the proceeds, and refund complainant the amount due him out of the shares of Mary and Edith Kelly.—*Lyon v. Powell*, 78 Ala. 351.

Decree reversed, and cause remanded, for further proceedings in accordance with this opinion.