## CLARKSON W. FREEMAN

*v.*

## JOHN I. RINAKER, Jr.

*Opinion filed April 17, 1900.*

1. MECHANICS' LIENS—*nothing can be inferred in support of a mechanic's lien.* One seeking to enforce a mechanic's lien must bring himself strictly within the terms of the statute, since nothing can be inferred in his favor.

2. SAME—*law authorizes mechanic's lien for services of architect in drawing plans.* Section 1 of the Mechanic's Lien law of 1895, (Laws of 1895, p. 226,) that any person who, by contract with the owner of a lot, shall prepare materials *for the purpose of* or in building a house on such lot, "or perform services as an architect for any such purpose," authorizes a lien in favor of an architect for services in preparing plans for a proposed building.

3. SAME—*written contract must contain provision as to time for completing work or making final payment.* Under section 6 of the Mechanic's Lien law of 1895, if the contract is in writing no lien can be had unless the contract provides for the time for completing the work or for making final payment, since under such section, which is a substantial re-enactment of the act of 1845, a reasonable time cannot be implied in the absence of a specified time.

4. SAME—*when architect's contract is not sufficient basis for mechanic's lien.* An architect's written contract is not sufficient basis for a mechanic's lien where it contains no provision as to the time for completing the work or for making final payment, and the provision for his compensation is a certain per cent upon the cost of the building, but the cost is not specified and the building is not constructed.

*Rinaker* v. *Freeman*, 84 Ill. App. 283, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding.

This is a petition for a mechanic's lien, filed by the appellee, John I. Rinaker, Jr., an architect, against the appellant, Clarkson W. Freeman, to enforce a mechanic's lien for the services of appellee as such architect upon a lot owned by the appellant, situated in the city of Springfield, and upon which the appellant proposed to build a hotel. Appellee prepared plans for a hotel building to be constructed upon the said property. These plans had been under consideration by appellant and appellee for some months, and appear to have been several times changed by the appellee at the request of the appellant. Thereupon, the following instrument in writing was executed by the appellant and delivered to the appellee:

"SPRINGFIELD, ILL., *Dec. 19, 1895.*

"It is hereby agreed between C. W. Freeman, of Springfield, Illinois, and John I. Rinaker, Jr., of Springfield, that said J. I. Rinaker, Jr., shall prepare plans and specifications for a hotel building for said C. W. Freeman on his lot 80x157, corner Fourth and Jefferson sts., city, for a compensation of two and one-half per cent, and shall superintend the construction thereof for a compensation of two per cent on the cost of the building, amounts payable to be paid by said C. W. Freeman as the work progresses.                          C. W. FREEMAN."

The claim for a lien is based upon the foregoing contract. After the plans and specifications were prepared, appellant sought and obtained bids thereon for the construction of the proposed hotel. The lowest bid received was for the sum of $145,000.00. The bids received were rejected by the appellant. It was ascertained that the lowest amount, for which he could procure the building to be erected by a local contractor was $135,000.00, but his proposition was to expend only $125,000.00 in the erection of the building. There was some conversation

about changing the plans and specifications, in order to reduce the cost of the building to $125,000.00. Appellee prepared to make such changes with the assent of appellant. On April 26, 1896, proceedings were instituted for the "incorporation of Freeman's Fire-proof Hotel Company;" both appellant and appellee and others were to be stockholders in this new corporation. The transfer of the site of the proposed hotel was about to be made to the company so organized by the appellant, when, on May 4, 1896, the appellee filed his claim for a mechanic's lien. Thereupon, appellant discharged the appellee and abandoned the hotel project. Appellant alleges in his answer to the petition that the act of filing the claim for a mechanic's lien by the appellee was unlawful, and warranted and justified his discharge of appellee and his abandonment of the project for building the hotel.

The cause was referred to a master in chancery, who reported in favor of appellee. The master's report found that appellee was entitled to a lien upon the premises for $3125.00, being two and one-half per cent upon $125,-000.00 as compensation for appellee's services in preparing the plans and specifications; but the report found against the allowance of a lien for the compensation of two per cent for superintendence.

On final hearing, the circuit court sustained exceptions to the master's report, and rendered a decree dismissing the bill. An appeal was taken from this decree to the Appellate Court. The Appellate Court has reversed the decree of the circuit court, and remanded the cause with directions to the circuit court to enter a decree in accordance with the views expressed by the Appellate Court in its opinion. The present appeal is prosecuted from such judgment so entered by the Appellate Court.

ROBERT H. PATTON, and PATTON, HAMILTON & PATTON, for appellant.

BURKE VANCIL, and CONKLING & GROUT, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The appellee is an architect, and drew certain plans and specifications for and at the request of appellant to be used in the construction of a building upon appellant's property. The testimony shows that all the plans and specifications for the building were not actually drawn, but that certain plans, called details, intended to indicate the exact dimensions and construction of the separate portions of the work, were not made by appellee. There is proof tending to show that such details are not made use of, until the building is well advanced.

The proposed hotel building was not constructed, but the project for the construction thereof was abandoned by the appellant, owner of the property. The lien, which the appellee seeks to enforce, is for services as an architect in drawing plans for a building, when nothing was done towards the actual construction of the building. Under the mechanic's lien laws of the various States, it has often been held that an architect is entitled to a lien, when he furnishes plans and specifications and superintends the actual erection of the building, proposed to be constructed in pursuance of such plans and specifications. But the decisions have been conflicting upon the question whether an architect is entitled to a lien, where he provides only plans and specifications, but does nothing in the way of supervision and superintendence of the building. (2 Am. & Eng. Ency. of Law,—2d ed.—p. 824). The rule has generally been that an architect, who simply provides the plans and specifications for a building, is not entitled to a lien for such services in the absence of any express statutory provision in his favor. (Phillips on Mechanics' Liens,—3d ed.—sec. 158; Boisot on Mechanics' Liens, sec. 116; *Price* v. *Kirk*, 90 Pa. St. 47; *Rush* v. *Able*, id. 153; *Raeder* v. *Bensberg*, 6 Mo. App. 435; *Foster* v. *Tierney*, 91 Iowa, 253).

Section 1 of the Mechanic's Lien law of Illinois, adopted in June, 1895, provides as follows: "That any person who shall, by any contract with the owner of a lot or tract of land, * * * furnish or specially * * * prepare materials * * * for the purpose of, or in building * * * any house * * * on such lot * * * or perform services as an architect for any such purpose * * * shall be known under this act as a contractor, and shall have a lien upon the whole of such tract of land or lot * * * for the amount due to him for such * * * services or labor, and interest from the date the same is due," etc. (2 Starr & Cur. Ann. Stat.—2d ed.—p. 2537). It was evidently the intention of the legislature, by the act of 1895, to give architects a lien for their services for drawing plans and specifications for a building, as well as for their services in superintending the same. The words in section 1, "perform services as an architect for any such purpose," refer back to the previous words, "for the purpose of, or in building any house." In other words, the lien is given for services as architect, not only in building any house, but for the purpose of building any house. When an architect draws plans and specifications for a building, even though he does not superintend its construction, he performs services for the purpose of building it.

The contract, however, which was made between the parties to this litigation on December 19, 1895, furnishes no basis for ascertaining the amount of compensation to be received by the appellee in case of a failure to construct the proposed hotel. By the terms of the contract appellee was to receive a compensation of two and one-half per cent "on the cost of the building, the amounts payable to be paid by the said C. W. Freeman as the work progresses." The meaning evidently is that appellee is to be paid a percentage upon the actual cost of the building, and not upon the proposed cost. This is apparent from the fact that he is to be paid "as the work

progresses." The reference here is not to the work of preparing the plans and specifications, but to the work of constructing the building. He was to be paid his percentage as the construction of the building should progress. But as no building was ever constructed, it is not possible to say what the cost of the building was, and if appellee's compensation was to be paid as the building progressed, it cannot be determined when such payments were to be made, as there was no progress in the construction of the building.

The lien given to the architect is for the "amount due to him" for his services. This contract furnishes no basis for ascertaining what amount was due to him in the event of a failure to erect the building proposed. The contract itself does not fix the cost of the building, and the actual amount, which it was to cost, does not seem to have been definitely determined. It would seem, therefore, to have been the intention of the parties, that, so far as the enforcement of any lien was concerned, the architect's fees were only payable in case of the actual construction of the building. Undoubtedly, the appellee would be entitled to recover in an action at law for his services in drawing the plans and specifications, but such recovery is very different from the enforcement of a mechanic's lien against the lot itself, upon which the building was to be erected.

No lien can be enforced for the appellee's services under this contract, for the reason that the contract is in writing, and contains no provision as to the time within which the work was to be performed or the money to be paid.

Section 6 of the act of 1895 provides as follows: "If the work is done, or materials are furnished under a verbal contract, no lien shall be had by virtue of this act unless the work shall be done or materials furnished within one year from the date of the contract, and final payment therefor is to be made within such time. If the

contract be written, no lien shall be had by virtue of this act, if the time stipulated for the completion of the work or furnishing materials is beyond three years from the date of the contract, or the time of payment beyond one year from the time stipulated for the completion thereof." (2 Starr & Cur. Ann. Stat.—2d ed.—pp. 2551, 2552.)

Provisions of a statute like those above quoted from section 6 of the act of 1895, were in force in 1845. In other words, the act of 1895, in the respect now under consideration, is, in legal effect, the same as was the statute of 1845. Section 2 of the mechanic's lien law of 1845 contained the proviso, "that the time of completing the contract shall not be extended for a longer period than three years, nor the time of payment beyond the period of one year, for the time stipulated for the completion thereof." (Rev. Stat. of Ill. 1845, p. 345). Under the statute of 1845 as above quoted, there could be no lien where the contract had no provision as to time for completion of the work or making of payment. The omission of the agreement as to time for completion and payment was conclusive as against the right to a lien.

In *Cook* v. *Heald*, 21 Ill. 425, we said in reference to said provision (p. 428): "This provision obviously requires that the time for its performance and the payment of the money shall be determined at the time when the contract is entered into, and not by alterations and changes which may be made in the agreement after it is entered into. And if there shall be no time fixed and agreed upon in the contract for the performance of the labor or furnishing the materials, within three years from its execution, and for the payment within one year from the completion of the labor or furnishing the materials, a lien would not attach. The lien is given by statute, and is in derogation of the common law and is opposed to common right, and should be strictly construed." (See, also, *Belanger* v. *Hersey*, 90 Ill. 70; *Adler* v. *World's Pastime Exposition Co*, 126 id. 373),

Under the mechanic's lien laws of 1861 and 1874, it was held that, where the contract contained no provision as to time, there was an implied agreement as to time, and, if the work was actually done within one year, the contractor could have a lien; but such decisions were all based upon the provisions then in force, which provided for a lien where the contract was implied, or partly implied and partly expressed. Those provisions, however, in relation to implied contracts, or contracts partly implied and partly expressed, are omitted from the act of 1895. (*Belanger* v. *Hersey, supra; Clark* v. *Manning*, 90 Ill. 380; *Driver* v. *Ford*, 90 id. 595; *Grundeis* v. *Hartwell*, 90 id. 324; *Orr* v. *Northwestern Mutual Life Ins. Co.* 86 id. 260).

In view, therefore, of the language of section 6 in the act of 1895 and of the construction given by this court to similar language in the act of 1845, it cannot be said, that, because no time was expressed in the contract between the parties in the case at bar, a reasonable time should be implied. The contract here was an expressed contract as distinguished from an implied contract, and no time was agreed upon for completion of the work. The law cannot imply any time for completion under such circumstances, and, therefore, the appellee was not entitled to a lien.

The remedy by a mechanic's lien is cumulative to the ordinary remedy given by the common law, and is a privilege enjoyed by one class of the community above all other classes; and, therefore, a party seeking to enforce it must bring himself strictly within the terms of the statute. Nothing can be inferred in his favor, but the law must be strictly construed. (*May Brick Co.* v. *General Engineering Co.* 180 Ill. 535).

For the reasons above stated the judgment of the Appellate Court is reversed, and the decree of the circuit court, which dismissed the appellee's petition, is affirmed.

*Judgment reversed.*