Dymond v. Bruhns.

---

**Franklin P. Dymond, Adm'r, etc., v. Catharine Bruhns et al.; James B. Clow & Sons v. Same.**

1. MECHANIC'S LIEN—*Form of a Waiver of.*—The opinion in this case contains the form of an instrument waiving a mechanic's lien, and the court holds it sufficient for such purpose.

2. WAIVER—*Of a Mechanic's Lien, a Question of Intention.*—What constitutes a waiver of a mechanic's lien is essentially a question of intention.

3. ESTOPPEL—*Does Not Operate to Aid in the Consummation of a
Fraud.*—The doctrine of estoppel will never operate to aid in the con-
summation of a fraud.

4. SAME—*By Conduct or Willful False Statements.*—Where a man
by his words or conduct willfully endeavors to cause another to believe
in a certain state of facts, which the first knows to be false, and if the
second believes in such state of things and acts upon his belief, he who
knowingly made the false statements is estopped from averring after-
ward that such a state of things did not in fact exist.

Petitions for Mechanics' Liens.—Consolidated causes. Appeals from
the Circuit Court of Cook County; the Hon. EDMUND W: BURKE and
the Hon. EDWARD F. DUNNE. Judges, presiding.   Heard in the Branch
Appellate Court at the March term, 1901.   Affirmed.   Opinion filed
April 4, 1902.

FRED H. ATWOOD, FRANK B. PEASE and CHARLES O.
LOUCKS, attorneys for appellant Franklin P. Dymond,
Adm'r, etc.; KNIGHT & BROWN, attorneys for appellant
James B. Clow & Sons.

ARNOLD TRIPP, attorney for appellees; CHRISTIAN MEIER,
WILL B. MOAK, O. G. KNECHT, A. L. BENNER and HENRY R.
PLATT, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

These consolidated cases are petitions for mechanics'
liens.   The appellant Dymond is administrator of the
estate of one Morris, who was assignee of the contractor
Roughan, and the appellant Clow & Sons was a sub-con-
tractor who furnished material and labor to Roughan that
went into the building.

The appellees are the owners of mortgages given by the
owner to secure loans on the premises.

It is urged with much insistence, by counsel for appellees,
that these cases are controlled and disposed of by the
decisions in Freeman v. Rinaker, 185 Ill. 172, and Kelly v.
Northern Trust Company, 190 Ill. 401.   But we think not.
Those were cases where the contracts were in writing.
Here the contracts are verbal.   The provisions of the
statute, contained in section 6 of the mechanics' lien law
of 1895, as to verbal and written contracts, are very differ-

ent.  Neubauer Decorating Co. v. Keeley Brewing Co. (unreported), Number 9510, First District.  Opinion by Presiding Justice Adams; filed May 23, 1901.

There was no definite time fixed by the parties to the contract for the completion of the work, or the final payment, and nothing was said about either, except that Roughan testified that Butts left him to carry on the work as fast as the building required it, and that Butts told Roughan he would like to have the building completed in time for the renting season, before the first of the next May, 1896.

The theory upon which the claimants have proceeded is that, no time for completion or final payment having been arranged for in the contract, it was implied that the same should be completed and paid for within a reasonable time. This may be the correct theory, if nothing has occurred to bar the petitioners from having any lien.

De Witt C. Butts was the owner of the land upon which the liens are claimed, and on or about November 5, 1895, while such owner, he entered into a verbal contract with one M. J. Roughan to furnish certain materials and perform certain labor in and about the erection of a large flat building on the premises so owned by Butts.

The verbal contract then entered into between Butts and Roughan was, as found by the master in chancery, as follows :

"Michael J. Roughan was to furnish De Witt C. Butts with the labor and material for the completion of the plumbing, gas fitting, sewering and steam heating, all that was necessary to complete the said improvements in those respects, at net cost of material and labor furnished in consideration; to which total net cost was to be added twenty-five per cent of the net costs thereof, which twenty-five per cent was to be Michael J. Roughan's profits on the said contract."

In pursuance of said contract, Roughan, on or about November 5, 1895, entered into a verbal agreement with the appellant Clow & Sons, a corporation, for furnishing a large amount of material for the improvement, which agree-

ment was performed by Clow & Sons, as the same was needed, between said November 5, 1895, and April 15, 1896. Roughan also completed his original contract with Butts, and Roughan subsequently assigned his claim to Morris, his assignee, whose administrator the appellant Dymond is.

On or about January 14, 1896, said Butts, being then the owner of the premises, executed and delivered to Edward S. Dreyer, as trustee, trust deeds in the nature of mortgages, securing notes aggregating $27,000, covering the lots and improvement. These notes were sold and the proceeds placed to the credit of Butts on the books of E. S. Dreyer & Co., as a building loan, and are owned by the appellees.

As the building approached completion, questions were raised by Mr. Berger, of Dreyer & Co., about paying out any more of the moneys held by them to the credit of the building loan. The result was, as found by the master and the court, that waivers of liens were furnished by Butts. As to these waivers, controversy seems to exist as to only two—those dated April 30, 1896, and executed by Roughan. As said by the master, in his report:

" There is much conflict of evidence as to whether or not the waivers of lien were ever delivered to Robert Berger * * * but the preponderance of evidence clearly establishes the fact that they were issued by M. J. Roughan * * * and that they were produced to Berger, and that upon their production and delivery to him, Berger paid out to De Witt C. Butts, the balance of money due him on the said building loan."

· And that by virtue thereof Roughan waived and lost all claim on the building and premises in question. The court below took the same view of the matter, and decreed that because thereof the appellant Dymond, administrator, has no lien upon the premises, as against the mortgagees. (Paulson v. Manske, 126 Ill. 72.) We have carefully examined the evidence touching upon the subject of these waivers and our conclusion is that no error was committed in regard thereto. But it is argued by counsel for appellants that no consideration for the waivers is shown, and that

appellees are estopped from invoking them to any greater extent than the amount that was paid out after they were produced.   One of the releases in question was as follows, and the other was exactly the same, except it purports to be for the steam heating apparatus :

"CHICAGO, April 30, 1896.

To ALL WHOM IT MAY CONCERN :

Whereas, I, the undersigned, M. J. Roughan, has been employed by De Witt C. Butts to furnish plumbing for the building known as Como, northeast corner of Fifty-seventh and Sangamon streets.

Now, therefore, know ye, that I, the undersigned, for and in consideration of ........ dollars, and other good and valuable consideration, the receipt whereof is hereby acknowledged, do hereby waive and release any and all lien or claim or right of lien on said above described building, and premises under ' An act to revise the law in relation to liens, approved March 25, 1874, and all amendments thereto,' on account of labor or materials or both, furnished, or which may be furnished by the undersigned to or on account of said plumbing for said building or premises.

Given under my hand and seal this 30th day of April, A. D. 1896.

M. J. ROUGHAN.   [SEAL.] "

The releases are under seal, and the seal imports a consideration.   What constitutes a waiver is essentially a question of intention.   Phillips on Mechanics' Liens, Sec. 273.   It seems to be plain that an absolute waiver of lien was intended by the papers that were produced to Berger. Berger was keeping watch over the building, and as it approached completion and the time grew near when the balance of the funds to the credit of the improvement would be wanted, he sent word to Butts to produce waivers of lien by those who were doing work under him.   Butts thereupon, shortly afterward, produced several waivers, including the ones in question, and was paid the balance of the money.

There was but one motive for asking or giving the waivers, that could reasonably be ascribed to the act, and that was to release the liens as recited in the writings purporting to be waivers.   But it is further said that the doc-

uments only purport to release any lien acquired under the act of 1874 and amendments thereto, whereas the liens in question arose under the act of 1895. The objection is too technical to overcome the clear intention of the parties. The release would have been sufficient if it had omitted all particular reference to the acts or amendments, it appearing plain that the thing intended was a release of all liens on account of labor and materials furnished.

The doctrine of estoppel will never operate to aid in the consummation of a fraud. It has its foundation in the maintenance of good faith, the redress of wrong and the prevention of fraud. Alder v. Pin, 80 Ala. 351; Nelson v. Kelley, 91 Ala. 569.

It not only appears that Roughan could have released his claim, but that he did it, and the release was acted upon. To say that appellees are now estopped from claiming the effect of the release beyond the amount of the money then remaining unpaid on the loans, is to commit a fraud upon the mortgagees, whose money went into the building, which we think can not be permitted.

"If a man by his words or conduct willfully endeavors to cause another to believe in a certain state of facts, which the first knows to be false, and if the second believes in such a state of things, and acts upon his belief, he who knowingly made the false statement is estopped from averring afterward that such a state of things did not, in fact, exist." Mr. Justice Brett, in Carr v. London Ry. Co., quoted in note 6 to page 570, Bigelow on Estoppel.

Concerning the claim of the corporation, James B. Clow & Sons, we think it is not entitled to a lien. It seems that Roughan was an extensive contractor, and had with Clow & Sons numerous other large contracts besides the one in question, at the same time with this one, for all of which Clow & Sons furnished material and supplies in pursuance of contracts with Roughan, and kept one general account with Roughan for everything furnished to him without in any way separating one contract or job from the other. All payments, whether by notes or in cash, made by Roughan, were credited to him on this one general account,

without reference to any particular job, and the total credits, and also the debits, shown by this account, exceeded, by several times, the amount claimed under its claim herein. Under the facts, as to the manner of keeping the accounts, it was, as said by the master, impossible for him or for any one, even Clow & Sons, to separate the items of the account applicable to the job in question from those of any other building Roughan was interested in, for which supplies had been purchased of Clow & Sons.

It was clearly necessary that Clow & Sons should be able to show that they furnished the materials claimed for the particular job against which they claimed a lien, and not that they were furnished on general account with the contractor. Hill v. Bishop, 25 Ill. 349.

Upon considering the whole record the decrees are affirmed.