LOWELL A. LAMOREAUX and Another v. LOUIS ANDERSCH and Others.[1]

January 29, 1915.

Nos. 18,938—(167).

**Mechanic's lien — claim of architect.**

1. An architect who, under contract with the owner of land, furnishes plans and specifications for the construction of a building thereon, is entitled to a lien upon the building and land upon which it is constructed, though he does not supervise the construction.

**Same.**

1a. If the owner, after the plans are furnished, of his own volition and without fault of the architect abandons the construction of a building on the land, the architect has a lien on the land. An actual improvement is not necessary to a lien.

**Same — filing lien statement.**

2. The contract between the architect and the owner was that the former

[1] Reported in 150 N. W. 908.

---

Note.—Upon the right to a mechanics' lien for services of architect, generally, see notes in 16 L.R.A. 600 and 36 L.R.A.(N.S.) 354.

should furnish plans and specifications for and supervise the construction of the building for an entire consideration based on a percentage of the total cost. The lien statement was filed within 90 days after the owner repudiated the contract. It is *held* that such statement was filed in time, though the last work on the plans and specifications was done more than 90 days prior thereto.

Action in the district court for Hennepin county to foreclose a mechanic's lien. The case was tried before Fish, J., who made findings and ordered judgment in favor of plaintiffs for $1,800. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Lancaster, Simpson & Purdy* and *James E. Dorsey,* for appellants.
*Lind, Ueland & Jerome,* for respondents.

BUNN, J.

This is an action to foreclose a mechanic's lien. There was a trial before the court without a jury and a decision for plaintiffs. Defendants appeal from the judgment entered on the decision.

The facts are as follows: Plaintiffs are architects. In September, 1912, defendants Louis and Julius Andersch and Charles Andersch, since deceased, entered into a contract with plaintiffs by the terms of which plaintiffs agreed to make plans, with details and specifications, for a building to be erected on two lots in Minneapolis owned by defendants, and to superintend the construction of the building. Plaintiffs were to receive as compensation for their services a sum equal to four per cent of the cost of the building. The plans and specifications were prepared, submitted to contractors for bids, and delivered, with the bids received, to defendants in November, 1912. Prior to this time defendants had a survey of the land made and furnished to plaintiffs for their use in preparing the plans, and tore down an old barn that was standing on the lots. The plans and specifications were retained by defendants without objection, but they did not accept or reject the bids, or take any action in the matter until May 27, 1913, when they repudiated the contract with plaintiffs, and abandoned the project of constructing a building on the lots. Prior to this time nothing was done either towards the con-

struction of the building or to discharge plaintiffs as architects or release them from their obligation to perform their contract.

After the bids were received plaintiffs prepared details. The last work on these was done March 27, 1913. On May 23, 1913, one of the plaintiffs devoted some time to an examination of the details, which had been drawn by an employee, to ascertain whether they had been properly prepared. The lien statement was filed August 18, 1913.

The questions argued by counsel are these: (1) Are plaintiffs entitled to a lien notwithstanding there was no improvement on the land? (2) Was the lien statement filed in time? (3) In case it be held there is no lien, was it error to refuse defendants' demand for a jury trial on the issue of their liability for breach of contract?

1. The first question is one of doubt and difficulty, and the conclusion reached is not the unanimous opinion of the court. It appears conclusively, we think, that there was no improvement on the land. The removal of the old barn by defendants and the making of the survey cannot be considered as an improvement. This was done entirely independently of the contract with plaintiffs, and clearly plaintiffs contributed nothing to this work. Architects are entitled to liens for services in preparing plans and superintending construction where there is an actual improvement to which their work contributes. Knight v. Norris, 13 Minn. 438 (473); Gardner v. Leck, 52 Minn. 522, 54 N. W. 746; Wentworth v. Tubbs, 53 Minn. 388, 55 N. W. 543; Wanganstein v. Jones, 61 Minn. 262, 63 N..W. 717. In each of the cases cited, there was an actual improvement, and in each the architect not only made the plans, but supervised the construction. It has been held that an architect's services in preparing plans only are not lienable, but we confess our inability to see why plans and specifications do not as much contribute to the construction of a building as does the supervision by the architect, and well considered cases so hold. Henry & Coatsworth Co. v. Halter, 58 Neb. 685, 79 N. W. 616; Parsons v. Brown, 97 Iowa, 699, 66 N. W. 880; Fitzgerald v. Walsh, 107 Wis. 92, 82 N. W. 717, 81 Am. St. 824; Freeman v. Rinaker, 185 Ill. 172, 56 N. E. 1055; Ehlers v. Wannack Bros. 118 Cal. 310, 50 Pac. 433; Field v. Consolidated Mineral

Water Co. 25 R. I. 319, 55 Atl. 757, 105 Am. St. 895. We think plaintiffs would have been entitled to a lien if their plans had been used in the construction of a building on the premises.

Is this right to a lien lost when the owner, through no fault of the architect, does not use the plans or make the contemplated improvement? Liberal construction of the lien statute is the settled policy in this state. But the right to a lien in any case is still wholly dependent upon the language of the statute. There is no lien except where the statute gives one. The answer to the question therefore depends upon the words of the statute, liberally construed to further the objects of its enactment.

G. S. 1913, § 7020, the first section in the chapter relating to liens for labor and material, and the one giving the lien, provides in substance that:

Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, for the erection of a building thereon, shall have a lien *upon such improvement, and upon the land on which it is situated,* for the price or value of such contribution.

By section 7021, a lien extends to the interest of the owner in "the premises improved." By section 7022, a person contributing labor, skill, materials or machinery for the construction, or alteration or repair of railway lines, etc., is given a lien upon "the line so improved." Section 7023, providing when a lien shall attach, says that, as against the owner, it shall take effect "from the time the first item of material or labor is furnished upon the premises for the beginning of the *improvement;*" that as against a *bona fide* purchaser, mortgagee or incumbrancer, no lien shall attach "prior to the actual and visible beginning *of the improvement on the ground,*" except when a contractor files in the proper office a brief statement of the nature of his contract, such statement is notice of his lien for the contract price or value "of all contributions to such *improvement* thereafter made by him." Section 7024 speaks of liens attaching "by reason of such *improvements,*" of liens for *improvements,* and provides for a notice to be served by an owner upon persons doing work or "otherwise contributing to such *improvement,*" when improvements are made upon his land without his authority. Section

7026 requires the lien statement to be filed in the county "in which the *improved premises* are situated," and provides that it shall set forth, among other things, "for what *improvement*" the labor, etc., was done or supplied. Section 7027 provides that a lienholder who has *contributed to the erection*, etc., of two or more buildings or improvements situated upon one lot or upon adjoining lots, under one contract with the owner, may file one statement for his entire claim, embracing the entire area *"so improved,"* or may apportion his demand between the several *"improvements,"* and assert a lien for a proportionate part upon each, and upon the ground appurtenant to each. Section 7028 requires an action to enforce the lien to be brought in the county in which the *"improved premises"* are situated. By section 7029, the summons is required to contain a brief description "of the *improvement* out of which the lien arose."

It must be conceded that the lien statute, if construed literally, does not expressly give a lien when no improvement is begun on the ground. Can we, by liberality of construction, nevertheless say that a lien may attach under such circumstances? To answer this question correctly, a review of our past decisions is necessary. We have no case where a lien has been granted when there was no tangible improvement on the ground. In Smith v. Barnes, 38 Minn. 240, 36 N. W. 346, the lien claimant supplied material for a building to be erected on lot 5. This material was diverted to lot 6, and no building was constructed on lot 5. It was held that, as against a mortgagee, a lien could not be enforced against lot 5. The court said that the statute "seems to contemplate that there must be or have been a building situated upon the land against which the decree is demanded." In Burns v. Sewell, 48 Minn. 425, 51 N. W. 224, lumber was furnished on the ground, but not used in the building. A lien was allowed, and the case distinguished from Smith v. Barnes, in that there was no building in that case. There are a number of cases in this state where liens have been allowed for material furnished for but not used in the construction, but in each case there was an actual improvement. Howes v. Reliance Wire-Works Co. 46 Minn. 44, 48 N. W. 448; Hickey v. Collom, 47 Minn. 565, 50 N. W. 918; Burns v. Sewall, supra; Combination Steel & Iron Co. v. St. Paul City Ry. Co. 52

Minn. 203, 53 N. W. 1144; John Paul Lumber Co. v. Hormel, 61 Minn. 303, 63 N. W. 718; Berger v. Turnblad, 98 Minn. 163, 107 N. W. 543; Thompson-McDonald Lumber Co. v. Morawetz, 127 Minn. 277, 149 N. W. 300. In the last case, it was decided that an actual delivery upon the premises of material sold to a contractor for use in the construction of a building was not necessary to a right to a lien, but that a good faith delivery of the material to the contractor is sufficient. This is an exception to the general rule that to entitle a mechanic or materialman to a lien for work performed or materials furnished at the request of the contractor, the work must be done or the material delivered on the premises upon which the building is being erected, as are the cases of Howes v. Reliance Wire-Works Co. and Berger v. Turnblad, in which the material required was specially prepared for the building at the shop of the contractor with the consent of the owner, but was not in fact delivered on the premises, the delivery being prevented by the owner. Logically it is·perhaps a stretch to say that one "contributes to the improvement of real estate" whose labor or material does not go into the improvement or enhance the value of the real estate. It should also be noted that the lien statute read "whoever performs labor or furnishes skill or material for the erection" of a building, instead of as it does now, at the time the cases above cited except the Thompson-McDonald case, were decided. But the last case is ample authority for holding that the change in the language of the statute does not change the settled rule in this state that actual use in the building or actual delivery to the premises is not essential to a lien. If, in the case at bar, the building had been actually constructed or its construction begun, on the plans furnished therefor by plaintiffs, their right to lien would be clear. The owner could not defeat the lien by abandoning the project after the improvement was actually begun on the ground, nor would the destruction by fire of a partially completed building destroy the lien.

Nothing can be added to what has been said in our past decisions of our policy as to the construction of lien laws. Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830; Johnson v. Starrett, 127 Minn. 138, 149 N. W. 6. While it is perhaps difficult to see how the value of

property is enhanced in any case by labor or material that does not go into the improvement, or how such labor or material "contributes to the improvement," our liberal policy has led to this result where there is an actual improvement. Is it an unwarranted extension of this doctrine to include cases where no improvement is made, when that is no fault of the laborer or materialman? There is little light on this question in the reported cases. The case of Smith v. Barnes, 38 Minn. 240, 36 N. W. 346, would be authority for the position that there must be an improvement on the land, except that the lien in that case was sought to be enforced against a mortgagee, while here the defendants were the contractors. The case of Foster v. Tierney, 91 Iowa, 253, 59 N. W. 56, 51 Am. St. 343, is valuable for the reasoning of the opinion, but the Iowa statute reads somewhat differently from ours, and Iowa is classed as a strict construction state. The case does hold, however, that architects are not entitled to a lien for plans and specifications where no improvement is made. In Freeman v. Rinaker, 185 Ill. 172, 56 N. E. 1055, the court said that an architect was entitled to a lien for preparing plans and specifications for a building which was not erected, but the case was decided against plaintiff on another point. The Illinois statute specifically gives a lien to one who performs services as an architect *for the purpose* of building a house, etc. These cases are the only ones cited that bear at all directly on the precise point involved here. We place our decision on the language of the lien statute of this state, as it has been construed in the cases referred to, and hold that there may be a lien without an actual "improvement," and that we can fairly say that plaintiffs "constructively" contributed to an improvement of defendants' land in this case.

We must not overlook the fact, as found by the trial court, that defendants prevented the improvement, thus of their own volition and through their breach of contract preventing the work of plaintiffs from actually contributing to the construction of an actual improvement on the land. We do not mean that the breach of contract created the lien. Of course it could not, but it is rather hard on those who have performed labor or furnished material in reliance upon the lien statute if the owner can defeat their liens by refusing

to go on with the building. It is true that the statute, in the various
sections above noted, speaks of an "improvement" as an accomplished
fact, and in every case that has heretofore come before this court
there has been some actual improvement wholly or partly constructed
or the construction begun. This would naturally be so in most every
case where liens are asserted. Clearly the right to a lien exists when
an improvement has actually been begun, be the start no more than
the beginning of an excavation. If the owner of land contracts for cut
stone or wood work for a building thereon, and the material is pre-
pared in the shops of the contractors and delivered to the premises,
should we say that the owner may defeat the right to liens by them
abandoning the construction of the proposed building? Though the
question is not free from doubt, we have reached the conclusion that
the owner cannot in this way destroy the right to a lien. This con-
clusion is strengthened by the language of section 7023 of the lien
statute, providing that "all such liens, as against the owner of the
land shall attach and take effect from the time the first item of mate-
rial or labor is furnished upon the premises for the beginning of the
improvement." The balance of the section providing that as against
*bona fide* purchasers and mortgagees without notice, "no lien shall
attach prior to the actual and visible beginning of the improvement
on the ground," seems to further justify the idea that as against the
owner, an actual beginning of the improvement upon the ground is
not necessary, providing the first item of labor or material is furn-
ished upon the premises, or specially prepared for the building in
the shop of the laborer or materialman, or, as in this case, in the
office of the architect.

We therefore hold that plaintiffs had a right of lien on the land of
defendants.

2. Was the lien statement filed in time? In deciding this question
we will assume that the last work on the plans, specifications and
details was done March 27, 1913. If the 90 days runs from this date
the lien statement was clearly filed too late. But plaintiffs had no
right to file a lien at that time, as they had not completed their con-
tract, which called for supervision of the construction as well as for
plans and specifications. It was an entire contract, and, had the

building been constructed, plaintiffs could not have recovered their compensation or filed a lien therefor until the construction was completed, as their contract would not be fully performed until that time. Bentley v. Adams, 92 Wis. 386, 66 N. W. 505; Richardson v. Central Lumber Co. 112 Ill. App. 160, following Freeman v. Rinaker, 185 Ill. 172, 56 N. E. 1055. There can be no doubt that this is correct, and it is claimed therefore that the date of defendants' repudiation of the contract, May 27, is the date from which the statutory 90 days begins to run. But our statute is plain and explicit: "The lien shall cease at the end of ninety days after doing the last of such work, or furnishing the last item of such skill, material, labor or machinery, unless within such period a statement" etc. shall be filed. Section 7026, G. S. 1913. The time for filing the statement does not run from the completion of the building, as it does in many states, but from the doing of the last work or furnishing the last item of skill or material by the lien claimant. Under statutes which do not permit a lien to be filed until the building is completed and which give a stated time thereafter in which it may be filed, it is manifestly logical to hold, as the authorities uniformly do, that the date of abandonment of the work is deemed the date when it is completed. 27 Cyc. 139, and cases cited. Otherwise lien claimants would be out entirely. But under statutes like ours one who does work or furnishes skill or material may file a lien when his work is done or contract performed; he need not wait until the building is completed, unless his contract is not performed until then. And, in such cases, when the work is abandoned or suspended without the fault of the lien claimant, he may immediately file a lien for the work already done or the skill or material already furnished, though he has not fully performed his contract. Knight v. Norris, 13 Minn. 438 (473). The present case clearly falls within this rule, and the only matter of doubt is: Within what time after the abandonment of the project by defendants could plaintiffs file their statement? Though in this particular case the 90 days from the date of furnishing the details had not expired when defendants repudiated the contract, there being some 30 days still to run, there might well be cases where the 90 days had already expired when the contract

was repudiated or work of construction abandoned. The manifest injustice in such cases of holding the right to a lien lost is apparent. Clearly plaintiffs had some length of time after May 27 in which to prepare and file their lien statement. We cannot say that it must have been done within the 30 days remaining, for such a rule would be in many cases an impossible one to apply. We must either say that they had a reasonable time thereafter in which to file their lien, or say that they had the full 90 days thereafter. A majority of the court favors the latter view. The case of Voigtmann v. Wilmington Trust Bldg. Corp. 78 Atl. 920 (Del.) is opposed to this conclusion, and the authorities in support of it are not entirely satisfactory, but a definite rule is better than one which leaves the question of what is a "reasonable time" to be litigated in each case.

Deciding as we do that plaintiffs had a lien and that the statement was filed in time, it is plainly unnecessary to determine the other question argued.

Judgment affirmed.