BALDYGA CONSTRUCTION COMPANY, INC., A NEW JER-
SEY CORPORATION, PLAINTIFF, v. DONALD A.
HURFF, SR., DIANE F. HURFF, HIS WIFE, THE BEHM
CORPORATION, ATLANTIC CITY ELECTRIC COMPANY,
DEE WOOD INDUSTRIES, INC., T/A DEE WOOD LUM-
BER CO., THE FIRST NATIONAL BANK OF TUCKAHOE,
AND EDWIN W. FALLS, DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)

Decided December 22, 1978.

*Mr. Igor Sturm, Esquire* for plaintiff (*Messrs. Charles, Sturm & Master,* attorneys).

*Mr. John W. Gilbert* for defendants.

STALLER, J. S. C. This is a motion for summary judgment brought by defendants Donald and Diane Hurff against plaintiff Baldyga Construction Company, Inc. (Baldyga) in an action in which plaintiff seeks to enforce a mechanic's lien.

Plaintiff subcontractor is a masonry contractor which, sometime in 1977, contracted with a general contractor, the Behm Corporation (Behm), to do masonry work on a home being built for the Hurffs. Baldyga's contract called for it to perform work consisting of clearing the lot, staking out the

house, installing the footings, foundations, steps, flatwork, brickwork and fireplace, and finishing the grading. Various stages of this work were to be done at different times during the construction of the Hurff home, starting with the first work to be performed on the home and ending with one of the last jobs to be completed, the grading.

On November 2, 1977, prior to having furnished any materials for or having performed any labor on defendants' home, plaintiff filed a mechanic's notice of intention with the Clerk of Cape May County (File No. 19981) pursuant to the provisions of *N. J. S. A*. 2A:44–71 *et seq.,* and on the same date served a copy of said notice on the defendants, the Hurffs and Behm, by certified mail.

Baldyga then proceeded to complete the lay-out, excavation, footings and foundations of the house and porch. The value of this work is $7,679, of which $3,000 has been paid to plaintiff. This work was started in November 1977 and completed no later than January 1978.

Since January 1978 no labor or materials have been supplied or furnished to the Hurff home by plaintiff. The general contractor, without the knowledge of the Hurffs, hired another masonry contractor to complete the remainder of the masonry work. This work was performed during a five-day period in April 1978 and consisted of a brick facing on the downstairs half of the house, a fireplace and chimney, a concrete floor in the garage and a cement floor for the front porch.

Plaintiff, as subcontractor, asserts that it was at all times ready and able to complete the above-mentioned work and was waiting for notice to return to the job to do so. Plaintiff also asserts that when it left the Hurff job in January 1978 it was with the understanding that it would be called back to install the fireplace and chimney and to do the facing and concrete flooring, at different stages of construction.

The general contractor stopped work sometime in May 1978. When no work was performed by Behm or its subcontractors for a period of time thereafter, Hurff's attorney sent

a letter to Behm dated July 19, 1978, informing it that it was no longer on the job because of a breach of contract in failing to complete the house by June 1, as allegedly had been promised. Apparently, Behm is no longer operating its business.

Baldyga was not notified of this termination until a letter from Hurffs' attorney was received by plaintiff's attorney on August 14, 1978. The effect of this letter was to inform plaintiff that Behm was off the job and that plaintiff would not be called upon to complete its masonry contract.

On September 29, 1978 plaintiff filed a mechanic's lien claim in the office of the Clerk of Cape May County, against the Hurff premises.

The basis of defendants' motion for summary judgment is that plaintiff's lien claim was not timely filed as required by *N. J. S. A.* 2A:44–91, which provides:

Every person intending to claim a lien under this article shall, and no debt shall be a lien by virtue of this article unless the claimant shall, within 4 months after the date of the last labor performed or the materials furnished for which the debt is due, file his lien claim with the proper county clerk, as in this article provided.

The Hurffs argue that plaintiff's filing on September 29, 1978 was after the expiration of the four-month period, which they contend ended no later than the end of May 1978. They claim that sometime in January, 1978, was "the date of the last labor performed . . . for which the debt is due." Plaintiff's position is that the four month period should be computed from the time when it was informed by the Hurffs that the Hurff-Behm contract was considered breached, at which time plaintiff's own contract to do masonry work on the Hurff premises was effectively terminated.

The question for determination is: at what point, under a building contract requiring work to be performed in various stages at different times during the construction process, the four-month period for filing mechanic's lien claims should begin to run?

While "[m]echanics lien statutes are remedial and are designed to guarantee effective security to those who furnish labor or materials used to enhance the value of the property of others," *J. R. Christ Constr. Co. v. Willete Assocs.*, 47 *N. J.* 473 (1966), it is also recognized that those provisions which cover the requirements for *establishing* a lien, including *N. J. S. A.* 2A:44–91, are to be "strictly construed." *Columbia Lumber & Millwork Co., Inc. v. DeStefano*, 12 *N. J.* 117 (1953); *Friedman v. Stein*, 4 *N. J.* 34 (1950).

There is authority, however, which for the purpose of construing the operation of *N. J. S. A.* 2A:44–91 focuses on the *date of completion* of a contract as the time for determining the commencement of the period within which a lien claim may be filed. *Derrickson v. Edwards*, 29 *N. J. L.* 468, 80 *Am. Dec.* 220 (1861). In the case of an entire building contract the court in *Derrickson* established the principle that

* * * in the contemplation of the statute, the work and materials cannot be considered as furnished until the whole contract was completed. Neither the language of the act, nor any intention which can be collected from it, requires a mechanic working under a contract, to file lien claims from week to week as his work progresses. [at 470–471]

This principle is especially applicable to the type of contract involved in the present case. The time for performance by Baldyga under its contract with Behm was completely dependent upon the construction progress Behm was making in building the Hurff's home. Baldyga was called upon to perform masonry work at the beginning of construction, including lay-out, excavation and foundation work, then was to be recalled at different unspecified times to do certain brickwork and finally was to return at or near the end of construction to do the gradings.

There were no clear guidelines as to when these separate phases of work were to be performed, nor was the general progress timetable within plaintiff's control. The court is

also aware that the construction of a home may take anywhere from several months to more than a year. It is apparent, then, that plaintiff subcontractor had no way of knowing, when it left the job after completing its initial phase of work in January 1978, whether it would have to wait weeks or months to be called for the next phase. Further, plaintiff, as a subcontractor, was not required to remain at the site during this lull nor to otherwise chart construction progress. Plaintiff's only expectations were that it would be notified when needed and that it would in fact be needed, as the contract with Behm specified.

Not to focus on the date of completion of the contract as the time of "last labor performed" for the purposes of *N. J. S. A.* 2A:44–91, would be to fail to take into account the uncertainty which a subcontractor such as Baldyga faces when it is required to perform at unspecified times under one entire contract. To require such a party to file a lien claim under *N. J. S. A.* 2A:44–91 and bring an action to enforce that claim under *N. J. S. A.* 2A:44–98 every time there is a four-month lull (not predetermined under the contract) between construction phases is unreasonable and undercuts a primary remedial purpose of the mechanic's lien laws: the guarantee of effective security to contractors and subcontractors. *J. R. Christ Constr. Co. v. Willete Assocs.*, 47 *N. J.* 473 (1966).

The problem with focusing on the date of completion of the contract in the present case is that the contract was terminated prior to completion. The case law is undeveloped in New Jersey concerning the abandonment of construction or termination of a contract as it effects the time for filing mechanics' liens, so we must turn for guidance to the law in other jurisdictions.

Typical of the law in many states is the holding of *Malcolm Price, Inc. v. Sloane*, 308 *A.* 2d 779 (1973), app. after remand 339 *A.* 2d 43 (1975), wherein the District of Columbia Court of Appeals held that when a contractor abandons a project prior to completion, the applicable time

period for asserting a mechanic's lien runs from the date of abandonment.

In *Malcolm Price, Inc.,* plaintiff contractor had entered into a written agreement with defendant homeowners in February of 1971. The contract called for plaintiff to renovate the basement of defendants' home. Plaintiff stopped performing work on May 21, 1971 when a dispute as to costs arose. Efforts to settle the dispute were undertaken but were formally broken off on September 13, 1971, when plaintiff informed defendants by letter that their counter-offer was rejected and that a mechanic's lien would be asserted. Notice to such effect was filed November 4, 1971. This filing exceeded the statutory period of three months from the time the last work was actually done. However, the court utilized the principle of abandonment. It denied defendants' motion to dismiss the complaint and quash the lien (which it treated as a motion for summary judgment), holding that a genuine issue of fact existed as to whether abandonment occurred when work stopped in mid-May or when plaintiff definitively rejected the homeowners' counter-offer in September.

The mechanic's lien statute in question in *Malcolm Price, Inc. (D. C. Code* 1967, § 38–102) differs from *N. J. S. A.* 2A:44–91 in that it provides that a notice of mechanic's lien is timely only if filed within the statutory period from *"completion of construction"* instead of from the date of "last labor performed." However, this does not mean that the principle of *Malcolm Price, Inc.* is not equally applicable to the type of mechanic's lien statute in effect in New Jersey:

Where the statutes require a mechanic's lien to be filed a specified time after the last item of work performed or material furnished, *if work is abandoned without his fault* a claimant may immediately file his lien for work done or material already furnished, though he has not fully performed his contract; and it appears clear that if abandonment occurs prior to completion of the claimant's contract but more than the statutory time after he performed his last work

or furnished the last materials, *the claimant may file his lien within the statutory time after abandonment.* 52 *A. L. R.* 3rd 797, 820 (emphasis added); *Lamoreaux v. Andersch* (1915) 128 *Minn.* 261, 150 *N. W.* 908.

■ It would be unreasonable and contrary to the remedial spirit of the mechanic's lien law to bar a subcontractor from recovery under its claim where it fully expected and was required by contract to return to complete its work, and such return was precluded by an abandonment and termination, not the fault of the subcontractor. In the present case, not to consider the abandonment and termination of the contract in determining the date of "last labor performed," would be to reach such a result. It would also leave this subcontractor, and subcontractors in a similar position, largely at the mercy of owners and general contractors.

There is one important factual distinction to be drawn between the present case and *Malcolm Price, Inc., supra,* and it bears upon the date which triggers the running of the four-month period. In *Malcolm Price, Inc.,* the party seeking to enforce the lien, the general contractor, had a contract directly with the property owners and was also a party to the abandonment. In the present case plaintiff is a subcontractor whose contract was with the general contractor, not the owners. Also, plaintiff here did not participate in the abandonment of the work and resulting contract termination in any way. Further, in the present case, defendants do not assert nor is there anything in the parties' affidavits to indicate that plaintiff had knowledge of the abandonment and contract breach at any time before August 14, when notification came from the Hurffs' attorney.

Therefore, unless the Hurffs can later establish that Behm stopped work *prior* to May 29, 1978 (since the filing of September 29 covers the four-month period dating back to May 29) *and also* that Baldyga actually knew or should have known of this stoppage prior to May 29, Baldyga was

entitled to expect to return to the Hurff job up until August 14. That date, *i. e.*, August 14 would be deemed the date from which the four-month period of limitations under *N. J. S. A.* 2A:44–91 commenced to run and the filing of lien claim on September 29 would have been timely.

■ Determination of the date of Baldyga's actual knowledge of the work abandonment remains a question of material fact to be resolved at trial.

■ The court notes it is clear under the reasoning of *Rigberg v. Narduc Development Corp.*, 47 *N. J. Super.* 588 (Ch. Div. 1957), that the work done from November 1977 to January 1978, though not within the four-month period of filing from September 29, 1978, *would* have been so connected with the work *Baldyga* expected to undertake had it been called upon to complete its contract that it would have constituted "one debt." Therefore, should it be determined that Baldyga did not have actual knowledge of the abandonment of work prior to May 29, it would be given the benefit of the mechanic's lien for the work completed from November 1977 to January 1978.

This court does not reach the question, raised in the brief submitted by Baldyga's attorney, of whether the Hurffs are estopped to assert the limitations defense against the mechanics lien.

Defendants' motion for summary judgment is denied.