OF THE

## UNITED STATES,

FOR THE

# DISTRICT OF VERMONT,

MAY TERM, 1853.

---

AZARIAH BOODY AND ANDREW B. STONE *v.* RUTLAND AND
BURLINGTON RAILROAD CO.

*Contract. Performance. Payment, &c.*

Where the plaintiffs contracted with the defendants, in writing, to build certain
bridges on defendants' road, at a certain sum per foot, to be paid one-fourth in
cash, and three-fourths in stock of the road at par value, and the contract was
entirely silent as to the time or place of payment, *it was held*, that looking to that
alone, the plaintiffs could not call for payment, either of the cash or stock, until
a complete performance of the contract on their part, or at any rate before or any
oftener than a bridge was fully complete; nor could they then sue and recover
for the stock without proof of a special request and a refusal to deliver it. For
if no time be fixed in the contract, or by other agreement of the parties, either
express or implied, for the doing of the thing, a request is essential to the cause
of action.

The defendants after the commencement of the suit mortgaged their road to secure
the payment of debts due from them to third persons; *it was held*, that the act of
mortgaging the road would not work or amount to a disability to perform the
contract, or make the defendants liable to pay money in lieu of stock.

Where it appeared, that the defendants were in the custom of making monthly
payments to their contractors, for work done on their road, upon estimates made
by the engineer at the end of each month, and that usage or custom having been
adopted with the plaintiffs, *it was held*, that this must be considered the rule of
payment under the contract, established by mutual consent, and binding upon
the parties.

Boody et al. *v.* Rut. and Burl. Railroad Co.

After the making of the original contract, the plaintiffs proposed to put in iron bearings instead of wood, for so much per foot of the bridges, varying like the prices in the original contract, according to the different spans of the bridges, " in addition," as they say, " to the former proposal," thus leaving the mode of payment unchanged, *held*, that it might well be inferred that the mode of paying for the iron bearings was to be the same as that provided for building the bridges.

THE nature and facts of this case, as well as the points present-ed and determined in it, will fully appear from the opinion deliv-ered by the court.

*J. D. Bradley* and ———— for plaintiffs.

*C. Linsley* and *D. A. Smalley* for defendants.

PRENTISS, J.   This is an action of account to recover the bal-ance of book accounts between the parties ; a form of action given by statute of this State for such purpose, and long in use here. After judgment to account was confessed by the defendants, and duly entered up, the action, by agreement of the parties and order of court founded thereon, was submitted to the determination of referees.   The referees have made and returned into court, a re-port, awarding to the plaintiffs the sum of $13,699,19, as being due to them from the defendants, to balance the accounts between them, and stating specially the facts and grounds upon which the award was made.   Both parties have filed exceptions to the re-port, objecting to certain allowances made by the referees, and in-sisting that the report should be modified and corrected in those particulars, and judgment be rendered upon it accordingly.

The dealings between the parties, forming the subject of the ac-tion, originated in the undertaking of the plaintiffs to build for the defendants, and in their actually building for them, all the Rail-road bridges in the Rutland and Bellows Falls divisions of their road.   The original contract, consisting simply of a written prop-osition, made by the plaintiffs in a letter, in August, 1847, and ac-cepted by the defendants in the same month, is very short and somewhat meagre, embracing but few details or particulars.   Af-ter stating the general plan or model of the bridges, it merely reg-ulates the rate and mode of compensation, without specifying the time or place of payment; that is, it only gives the prices of con-structing the bridges per foot, varying according to their different

spans, to be paid one-fourth in cash, and three-fourths in stock of the road at par value.

For the unpaid balance due, and payable under the contract in cash, according to the stipulated prices, including the work conceded to be extra, which was of course payable in money, it is not denied by the defendants that the plaintiffs are entitled to recover. The only questions presented by their exceptions are,— have the plaintiffs a right, on the facts stated in the report, to recover the value of the stock agreed to be paid? and if so, should the rule of estimate be its value in February, 1850, as allowed by the referees, which was sixty per cent. of its par value, or its value at the time of commencing the action, which was only fifty per cent.?

The written contract, as we have already seen, is entirely silent as to the time or place of payment; and looking to that alone, the plaintiffs could not call for payment, either of the cash or stock, until a complete performance of the contract on their part, or at any rate before or any oftener than a bridge was fully completed, nor could they then sue and recover for the stock without proof of a special request and a refusal to deliver it. It is an undeniable rule of law, that where the promise is, to do a collateral thing on request, the request is parcel of the contract, and no right of action arises, until a request be made. So, if no time be fixed in the contract, or by other agreement of the parties, either express or implied, for the doing of the thing, a request is essential to the cause of action. Here, no direct, formal request having been made by the plaintiffs for the stock, the question is, whether on the facts found and stated by the referees, a time was fixed for the payment of the stock, so as to make a special demand or request unnecessary, or whether the facts otherwise supersede or dispense with the necessity of such demand or request.

If the fact of the defendants having, since the commencement of the suit, mortgaged their road to secure the payment of debts due from them to third persons, and thereby put it out of their power to give the plaintiffs stock unincumbered, could be considered as disabling the defendants to perform their contract, it would, no doubt, render a request of the stock unnecessary, and a recovery could be had for it here, since the law allows a recovery, in this form of action, for items of account accruing or becoming due after the commencement of the action, as well as for those which

Boody et al. v. Rut. and Burl. Railroad Co.

had accrued or become due before. But we think the act of mortgaging the road would not work or amount to a disability to perform the contract. The debts were really as much a charge upon the road, or incumbrance upon the stock, before, as after the mortgage. The mortgage, it is true, might have the effect to depreciate the stock in the market, and render it less valuable to the holder ; but every purchaser of, or contractor for stock, knows that he must take and hold it subject to all charges incident to the completion and use of the road, and the accomplishment of other legitimate objects of the corporation. We cannot, therefore say, that by the act of mortgaging the road for the purpose mentioned, the duty of the defendants to pay stock, was converted into an obligation or liability to pay money in lieu of the stock. The right of the plaintiffs to recover for the stock, if any such right exists, must then rest upon the other facts reported in the case.

The time of payment, there being no stipulation in the written contract on the subject, may unquestionably be inferred from other evidence, such as the usage of the company in paying their contractors, the acts of the parties, or the course adopted and pursued by them under the contract. Such evidence does not contradict any of the terms of the contract, but is mere suppletory matter, showing the understanding and intention of the parties, or rather the practical construction put by them upon the contract. Now, it is expressly stated in the report, that it was the custom of the defendants to make monthly payments to their contractors for work done on their road, upon estimates made by the engineer, at the end of each month, and that this practice was adopted with the plaintiffs. It thus appearing to have been the usage of the company to pay monthly on the estimates, and that usage having been adopted in reference to the plaintiffs, the referees might well consider it as the rule of payment under the contract, established by mutual consent, and binding upon the parties.

The report says nothing as to the place of payment. If the place, as well as the time of payment, had been fixed, it would be sufficient for the defendants to show that they were ready at the time and place to make payment. But if no place was fixed, it would be the duty of the defendants, at or within the time, to tender or offer the stock to the plaintiffs. If the payments were not made monthly, in full, by reason of the estimates not being made

in full, as appears to have been the case, the fault would seem to be on the part of the defendants, the estimates being made by an officer in their employment, and acting under their control. It was owing to the estimates not being made in full, as is stated to have often happened in practice, that there was so large an unpaid balance due the plaintiffs in cash and stock, on the completion of their contract, in December, 1849. After that, I suppose no estimates were necessary. The plaintiffs soon called for money on account of the contract, but the defendants declined paying any, until there had been an examination of the accounts. For the purpose of such examination, and with the view of making a final adjustment of the plaintiffs' claims, the parties met, in February following; but no settlement was effected, as they could not agree on the amount due, or on the mode of payment of some of the items in the account: the plaintiffs claiming that the extra work and iron bearings should be paid for wholly in cash, and the defendants claiming that all extra work connected with the bridges, and also the iron bearings, should be paid for in stock and cash, as under the contract, and refusing to settle upon any other terms. On these and the other facts stated, the defendants having made no tender or offer of stock; the referees found that the plaintiffs were entitled to recover the value of the stock; and having so found, we are not disposed, under the circumstances of the case, admitting the point not to be entirely free from doubt, to disturb the award on that account. It follows, of course, if the plaintiffs had a right of action at law, in February, 1850, to recover for the stock, it should be estimated, as it was, according to its value at that time.

The other question in the case, arises out of the exceptions filed by the plaintiffs, and relates to their claim for the iron bearings. The question is, whether this claim falls within the terms of the original contract, to be paid in the manner therein stipulated, one-fourth in cash and three-fourths in stock, or whether it should be treated as in the nature of a claim for extra work, to be paid, of course, wholly in cash. The referees considered it as subject, in that respect, to the terms of the original contract, and have allowed the claim, and stated the account, according to the mode of payment therein prescribed; and we think they were justified in so doing.

Boody et al. *v.* Rut. and Burl. Railroad Co.

Where the parties deviate from the original plan agreed upon, and the terms of the original contract do not appear to be applicable to the new work, it being beyond what was originally contemplated by the parties, it is undoubtedly to be regarded and treated as work wholly extra, out of the scope of the contract, and may be recovered for as such.    But it is otherwise, if the original terms be not inapplicable, and there be evidence from which it may be inferred that it was the intention of the parties that the new work should be subject to those terms.    Here, the original agreement contains particular stipulations as to the mode of payment for building the bridges, and the subsequent agreement, under which iron bearings were substituted for the wood bearings, contemplated in the original plan, is wholly silent as to the manner of paying the additional expense they would occasion.    From that circumstance, taken in connection with the expressions employed in the latter agreement, it might well be inferred that the mode of paying for the iron bearings was to be the same as that provided for building the bridges.    The plaintiffs propose to put in iron bearings instead of wood, for so much per foot of the bridges, varying, like the prices in the original contract, according to the different spans of the bridges, " in addition," as they say, " to the " former proposal," thus referring to the original contract.    The intention and effect of the second agreement, would seem to be simply to vary the original plan so far as to substitute iron bearings for wood, and to make a corresponding alteration of the original stipulated prices, by adding thereto so much per foot as would cover the additional cost, leaving the mode of payment unchanged. It was not intended as a separate independent contract, but merely as supplemental or additional to the other; and no doubt, in pleading, a declaration stating the original contract, and the agreement altering its terms in the particulars mentioned, would be good in law.

Such being the views we take of the points raised in the case, the consequence is, that the exceptions of both parties must be overruled, and judgment be rendered on the report for the sum awarded to the plaintiffs, with interest thereon from the time of filing the report.