# FITZGERALD, Respondent, vs. WALSH, Appellant.

*April 28 — May 15, 1900.*

*Contracts: Mechanics' liens: Architects: Plans and specifications: Acceptance: Commencement of work: When lien attaches.*

1. Plaintiff, an architect, agreed in writing with defendant to make plans and specifications for a building and superintend its construction for a stipulated price. After accepting the plans and specifications made, defendant abandoned the idea of erecting the building in accordance therewith, and ordered plaintiff to make new plans for an entirely different structure, which was done. *Held*, that the accepted order for the second set of plans constituted a new contract having no relation to the work done under the written contract, and did not preclude recovery of compensation for the second set in addition to the price agreed upon in the written contract.

2. The right to a mechanic's lien, under ch. 143, Stats. 1898, for work done in the construction of a building is not dependent upon whether a building is actually constructed, but whether such construction is commenced. If the latter circumstance occur, and lienable work be done in aid thereof, the right of lien thereby becomes perfect and cannot thereafter be defeated by any act of the proprietor.

3. Indebtedness from the proprietor and commencement of the work being the two things necessary, under sec. 3314, Stats. 1898, to give a right to a lien, an architect who makes plans and specifications for a contemplated building is entitled to a lien therefor, where the construction of the building according to such plans is commenced, although the use of them is abandoned before anything is done except a part of the excavation for the basement.

4. In an action to enforce a mechanic's lien, it appeared that plans and specifications made by plaintiff for a contemplated building, after delivery to defendant, were used by him in negotiating with contractors and in setting stakes indicating the boundaries, and that thereafter part of the excavating for the basement was done before the use of the plans was abandoned. *Held*, that there had been an acceptance of the plans, which, with the commencement of the construction of the building, gave plaintiff a lien thereon.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

Action to enforce a claim for a lien for architect's services under the statutes in relation to the liens of mechanics and others. The complaint was in the usual form, except that it stated that the plaintiff's services were performed in making plans and specifications for a building *to be* erected, without the usual allegations showing actual work upon the building. Defendant answered, putting in issue, in the main, all the material allegations of the complaint. The controverted facts on the evidence were as regards the nature of the contract under which plaintiff's services were performed and the amount of the indebtedness which accrued for such services. On those questions the court signed findings to the effect that it was agreed between plaintiff and defendant that the former should prepare plans and specifications for a building to be erected on the premises described in the complaint and superintend the erection of such building for $1,000; that plaintiff fully performed his part of such agreement as to the making of plans and specifications, and that the work was fully accepted by the employer; that defendant thereafter abandoned the idea of erecting a building;

according to such plans and specifications, and ordered plaintiff to make new plans and specifications for an entirely different kind of structure; that plaintiff fully complied with such order; that his work was accepted by the employer and the excavation for the building commenced in accordance therewith; that the reasonable value of plaintiff's work was $1,400, no part of which has been paid. There were sufficient findings as to the filing of the lien claim and the commencement of the action. A lien judgment in plaintiff's favor was rendered in accordance with the statutes on the subject of liens of mechanics and material men, the amount due plaintiff being fixed at $1,400 and interest, from which this appeal was taken.

For the appellant there was a brief by *Timlin, Glicksman & Conway,* and oral argument by *Nathan Glicksman.*

For the respondent there was a brief by *J. M. Clarke* and *P. J. Somers,* and oral argument by *Mr. Clarke.*

MARSHALL, J.   Three questions are presented for consideration on this appeal: (1) What was the indebtedness of defendant to plaintiff for the work rendered by the latter, mentioned in the complaint? (2) Is an architect entitled to a lien, under sec. 3314, Stats. 1898, for compensation for making plans, specifications, and estimates for a contemplated building upon the land of another, if the construction of the building, pursuant to such plans, be commenced, though the use of them be abandoned before anything is done except a part of the excavating for the basement? (3) Was the construction of the building commenced according to the plans and specifications furnished by plaintiff?

1. Appellant's counsel contended that, respondent having agreed in writing to make plans and specifications for the building and to superintend its erection for the stipulated price of $1,000, an express contract was necessary to give him a legal claim upon the appellant for services rendered

Fitzgerald vs. Walsh.

without objection, not included in such contract, basing such contention on the rule governing the relations of master and servant and that between an officer of a corporation and his principal in regard to personal services. Such rule does not apply to a situation of the kind in question. It is well settled that where a builder is ordered to make changes from the original contract plans, which are really extras, or to do work in some way connected with the original contract but substantially independent of it, and the circumstances are such that the proprietor must know that the execution of such orders will cause extra labor and expense to the builder not contemplated by either party in the original contract, he is liable to compensate the builder therefor in the absence of some express provision in such original contract to the contrary. The rule is stated in 1 Hudson, Building Cont. (2d ed.), 358, citing *Gibbons v. United States*, 15 Ct. Cl. 174, thus: "Where a change in the contract is ordered amid circumstances which imply or warrant the belief that no extra cost will result from the change, it is the duty of the contractor to notify the other party that he cannot make the change without extra price. But where a change is ordered which must necessarily cause increased expense, no such notice is necessary." Such work cannot be said to have been in contemplation by the parties at the time of making the contract for the construction of the building. There was no meeting of minds on that subject. So the doing of such work when ordered, without objection, cannot reasonably be said to be voluntary and without expectation of compensation if the expense to the builder is thereby necessarily materially increased. In such circumstances an implied promise arises to pay for the extra or independent work, in the absence of anything in the contract to the contrary. *Boody v. R. & B. R. Co.* 24 Vt. 660, 665; Wait, Engineering & Arch. Jur. 490; *Escott v. White*, 10 Bush, 169.

Now the trial court found, on such evidence that the find-

ing cannot be disturbed, that respondent, pursuant to his contract with appellant, made complete plans and specifications for a building to be erected on appellant's premises, and that they were accepted. That branch of the contract was thereby fully executed. Respondent did not agree to make all plans and specifications appellant might order in contemplation of the construction of a building, but to make plans and specifications for the proposed building. The only reasonable, sensible construction of that language is that it called for one set of acceptable plans and specifications. That being satisfied, the acceptance of an order for another set was neither within, nor a mere extra, incidental to, the original contract.

The accepted order for the second set of plans was rightly decided by the trial court to constitute a new contract having no relation to the work under the written contract, and not governed thereby except as to the price for the new work. Nothing having been said about compensation therefor, it was fair to presume, as the trial court did, that both parties contemplated that it would be paid for at the same rate as the original work of the same nature, called for by the writing.

It is considered that there were two separate and distinct contracts in this case as plainly as there was in *Hand v. Agen*, 96 Wis. 493. The first contract, exclusive of the work of superintending the construction of the building, having been fully executed, the rule announced in *Boody v. R. & B. R. Co.* 24 Vt. 665, applies: "Where the parties [under a special contract] deviate from the original plan agreed upon, and the terms of the original contract do not appear to be applicable to the new work, it being beyond what was originally contemplated by the parties, it is undoubtedly to be regarded and treated as a work wholly extra, out of the scope of the contract, and may be recovered for as such."

We do not understand that, conceding the above theory

to be correct, it is claimed that the amount of the indebtedness of appellant to respondent was placed too high by the trial court. In any event, the finding in that regard is well supported by the evidence.

2. The right to a lien under ch. 143, Stats. 1898, for work done in the construction of a building, is not dependent upon whether a building is actually constructed, but upon whether such construction is commenced. If the latter circumstance occur, and lienable work be done in aid thereof, the right of lien thereby becomes perfect and cannot thereafter be defeated by any act of the proprietor. The language of sec. 3314 is that the lien for work done in the construction of a building shall be prior to any other lien which originates subsequent to the commencement of such construction. Sec. 3321 provides for joining in one action all claims on the property affected. Sec. 3324 provides that the judgment shall direct a sale of all the right, title, and interest which the owner had in the property at the time of the commencement of the work. And sec. 3325 provides for the distribution of the proceeds of a sale made pursuant to the judgment, among all the lien claimants without priority, clearly indicating that, without reference to when the indebtedness of the respective lien claimants on the same property accrued, if there be several and the liens be for work done or material furnished in the construction of a building, they shall all attach at the same time; that is, at the time of the commencement of the construction. That was decided to have been the legislative intention in *Vilas v. McDonough Mfg. Co.* 91 Wis. 607, where it was held that the right of lien for machinery manufactured and furnished for a sawmill after the commencement of the construction of the mill building, related back and attached to the property at the time of the commencement of such construction, regardless of when work commenced on the machinery at the factory or when it was attached to such building, and took prece-

dence of a mortgage placed on the property in the meantime.

Statutes similar to ours exist in Indiana, Kansas, Maryland, New Jersey, and other states, and have been construed there as in *Vilas v. McDonough Mfg. Co.*, the courts in some instances remarking that such statutes evidence the intent indicated so plainly as to leave no room for judicial construction. *Kansas M. Co. v. Weyerhaeuser*, 48 Kan. 335.

So these two things only are necessary to respondent's right of lien: indebtedness of appellant to him for work done, that appellant knew or ought to have known respondent supposed was on account of a building to be presently, or in the near future, constructed; and the commencement of such construction. If the construction of the building the plans were made for was actually commenced, according to such plans, the lien then attached and could not thereafter be defeated by any act on the part of appellant. The principle applies, that if a person sell material for use in the construction of a building, and such construction be commenced so that a lien may attach to the property, the seller is entitled to his lien thereon, whether such material be actually used in the building or not. *Esslinger v. Huebner*, 22 Wis. 632; *Spruhen v. Stout*, 52 Wis. 517. That is in perfect harmony with *Foster v. Tierney*, 91 Iowa, 253, relied upon by appellant. The trouble there was that the construction of the building was not commenced, so the lien, necessarily, could not attach.

3. There is left to be considered the question of whether the building was commenced pursuant to accepted plans furnished by respondent. We use the term " accepted plans " only because such plans were essential under the contract to entitle respondent to compensation for his work. On the subject of this last question, we cannot say the finding of the trial court is against the clear preponderance of the evidence. The commencement of the excavation was the

commencement of the building within the meaning of the
statute.   There is abundance of evidence of that having oc-
curred after the plans were accepted and before respondent
was notified that they would not be used.   Commenting on
statutes similar to ours, and quoting from judicial authority,
it is said in Jones, Liens, § 1309*b:* "The foundation of a
house or barn constitutes a building within the meaning
of the statute giving a mechanic's lien upon a building and
upon the lot of land upon which it stands.   It is immaterial
that the building was never erected or was never completed,
or that the purpose to erect it was abandoned.   Laborers
and materialmen who are employed to do work or furnish
material, with the purpose of the employer, then formed,
to continue the work to the completion of a building for
which the foundation is thus being prepared, are entitled to
acquire a lien under the statute."   In *Brooks v. Lester*, 36
Md. 65, it was said that the commencement of a build-
ing "is some work or labor on the ground,   .   .   .   such
as beginning to dig the foundation or work of like descrip-
tion, which every one can readily see and recognize as the
commencement of a building."   In *Mutual Benefit L. Ins.
Co. v. Rowand*, 26 N. J. Eq. 389, the following language
was used: "The legislature intended to make the actual
and visible commencement of the building notice to all who
might propose either to purchase or acquire liens upon the
property.   .   .   .   The excavation for the foundation is
such notice."   To the same effect are *Thomas v. Mowers*, 27
Kan. 265; *Pennock v. Hoover,* 5 Rawle, 291; *Scott v. Gold-
inghorst*, 123 Ind. 268; *McCristal v. Cochran*, 147 Pa. St. 225.

In the last two cases cited it was held, in effect, that if
the excavation for the foundation be commenced, the build-
ing is commenced, and there is a building within the mean-
ing of the lien statute, and lienable claims will attach to the
property and remain liens thereon till discharged by fail-

ure of the lien claimants to enforce them, or by payment thereof.

Guided by the foregoing, the finding of the court that the building which the plans in question were made for was commenced pursuant thereto, was based on the following: Plaintiff testified that he delivered the completed plans and ·specifications to *Mr. Walsh*, who thereafter had them at his office and used them in negotiating with contractors. There was evidence tending to show that a Mr. Shea was employed by *Walsh* to make the excavation; that Shea obtained from his employer a section of the plans and delivered it to the city engineer for use, and that it was used by such engineer in setting the stakes to indicate the boundaries of the foundation; that the engineer afterwards did his work over at the special request of *Walsh*, who furnished him a section of the plans; that such section was delivered by the engineer to *Fitzgerald;* that *Walsh* subsequently called on *Fitzgerald* for that part of the plans; that Shea did over 1,000 yards of the excavating work, largely, if not all, prior to January 21, 1899; that on such day *Walsh* sent the plans back to *Fitzgerald*, indicating that he did not intend to make any further use of them; and that such event was preceded, by a few days only, by a rupture between *Walsh* and *Fitzgerald*, and a refusal by the former to pay the latter anything on account of his work, and the employment by the latter of attorneys to seek redress in the courts.

In view of that state of the record, we cannot say the trial court was not warranted in deciding that the building for which the respondent prepared the plans and specifications was actually commenced, and that his right of lien attached to the improvement, as a building, in contemplation of the lien statute, and to all the right, title, and interest of the owner at the time of the commencement of the construction of such building, which could not thereafter be extin-

guished by any act of the appellant except by payment of the claim.

The foregoing renders it unnecessary to consider any other question presented by the appellant. It requires the affirmance of the judgment appealed from.

*By the Court.*— So ordered.