## OCTOBER TERM, 1908

[No. 1754.]

TONOPAH LUMBER COMPANY, A CORPORATION, RESPONDENT, *v.* THE NEVADA AMUSEMENT COMPANY, A CORPORATION, ET AL., APPELLANTS.

1. MECHANICS' LIENS—LIENS FOR MATERIALS—CONTINUING CONTRACT. Where materials were furnished from time to time, as ordered on a running account, on an understanding that they were to be used in the construction of a building, and the material-man had reasonable grounds to expect that the materials would be ordered from time to time to finish the building, the materials were furnished under an entire and continuing contract.

2. APPEAL AND ERROR — FINDINGS — CONCLUSIVENESS. The supreme court will not vary a finding of fact, where there is substantial evidence to support it.

3. MECHANICS' LIENS—ENFORCEMENT—ACTIONS—"KNOWLEDGE." A complaint, in an action to foreclose a material-man's lien, brought against the owner, lessee, and contractors, which alleges that the owners at all times knew that the lessee was constructing a building, and did not at any time give notice that they would not be responsible therefor, sufficiently charges the owners with "knowledge," within Comp. Laws, 3889, providing that every building constructed on lands with the knowledge of the owner shall be held to have been constructed at the instance of the owner, etc.

4. SAME—PROCEEDING TO PERFECT LIENS—STATUTES—COMPLIANCE. While a material-man's lien can only legally exist when perfected as prescribed by the statute creating it, yet the statute, being remedial, must be liberally construed, and a substantial compliance is sufficient.

5. SAME. Comp. Laws, 3881, 3889, give a lien for materials used in the con-
struction of any building, etc. Stats. 1903, p. 51, c. 32, requires the fil-
ing of a claim for a lien within fifty days after the completion of any
building. A material-man furnished materials as ordered, from time
to time, by the contractor. Owing to strikes and the stringency of the
money market, the work on the building ceased. Subsequently a room
therein was finished according to the original plans. The material-
man furnished materials when work was resumed:   *Held*, that the
materials were furnished under a continuing contract, and the filing,
within fifty days after the completion of the work, of a claim for a lien
for all the materials, was sufficient.

APPEAL from the District Court of the First Judicial
District of the State of Nevada, Esmeralda County; *Frank
P. Langan*, Judge.

Action by the Tonopah Lumber Company against the
Nevada Amusement Company, *et al.* From a judgment
for plaintiff, defendants appeal. **Affirmed.** Petition for
rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*David S. Truman*, for Appellant:

I. From a consideration of the contract set out in the lien,
it will readily be seen that each order of lumber, each deliv-
ery of the same, constituted a completed contract and trans-
action in itself, and one upon which an immediate right of
action arose and could be unquestionably maintained by the
lumber company for the purchase price. (*Phillips* v. *Duncan*,
3 Am. Law. Reg. 304.) Here every element of a completed
sale has occurred, and on a failure to pay for the same an
immediate right of action accrued, and this applies to each
separate order or delivery of material in pursuance thereof.
Under the lien law of Nevada the time for filing a lien com-
mences to run from "the completion of the building, improve-
ment or structure, or after the completion or repair thereof,"
and the time for the lumber company to file its lien was fifty
days thereafter. (Stats. 1903, p. 51.) This being the law,
one of two positions ensue and prevail: (1) Either as to the
attempted enforcement of this lien it was commenced prema-
turely; or (2) as to all the items furnished prior to February
15, 1907, it was filed too late, and those items had all ceased
to be proper lienable charges under the various authorities

we submit. There seems to be a marked unanimity in the decisions to the effect that, where the completion of the building is abandoned, or work ceases upon the premises sought to be subjected to the lien, this cessation of the work and abandonment constitute a completion of the same for the purposes of the mechanic's lien, as in California and Colorado, where some definite time after stopping of work is fixed by the statutes. (*Chicago Lumber Co.* v. *Merrimac River Sav. Bank*, 52 Kan. 410; *Main St. Hotel Co.* v. *Horton Hardware Co.*, 60 Kan. 448; *Shaw* v. *Stewart*, 43 Kan. 572; *Knight* v. *Morris*, 13 Minn. 473; *Naughton. Slate Co.* v. *Nicholson*, 97 Mo. App. 332; *Catlin* v. *Douglass*, 33 Fed. 569; *Johnson* v. *LaGrave*, 108 Cal. 324.)

*Thompson, Morehouse & Thompson*, for Respondent:

I. Comp. Laws, 3885, requires the material-man to file for record his notice within fifty days after the completion of the building. That cannot be done in this case. Is it, therefore, the intent of the law, when it says (Comp. Laws, 3881) "has a lien," that such lien shall be lost when there is a failure of completion of the building through no fault of the material-man? Certainly not. If a condition arises outside the letter of the statute, then the court will construe the statute according to its spirit and purpose, for the rule of construction is (Sutherland, Stat. Const. 376): "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." Now, no one can read our mechanics' lien law without seeing that the intent of the law is to give a lien, not to take it away or destroy it. As is said in *Catlin* v. *Douglass*, 33 Fed. 569: "The court should not take a technical or narrow view, but should save to parties entitled to liens any rights that they may justly have under a fair and equitable construction of the facts and the law applicable thereto." And in that case the court says: "It seems to me, it would be inequitable and unreasonable and contrary to the spirit of the law to hold that parties are absolutely barred of all rights of the lien law, where the work is permanently stopped or abandoned without fault of such parties. Such a construction would

place material-men and laborers at the mercy of the dishonesty, fickleness or misfortune of the owner or contractor." This is the rule especially applicable to Nevada, for here the mechanics' lien is liberally construed. (*Skyrme* v. *Occidental*, 8 Nev. 219; *Hunter* v. *Truckee Lodge*, 14 Nev. 24; *Walter* v. *Falcon M. Co.*, 18 Nev. 209.)

*David S. Truman*, for Appellant, in reply:

I.  There was no entire contract for this plaintiff to furnish the lumber with which to go on and fully complete this building, or any definite portion of the same.  The lumber was simply purchased in the open market.  We, therefore, say that this, nor any other, contract with plaintiff can now, nor ever could be held or claimed to be a continuous contract after the work quit on February 15th.  This was never agreed nor contemplated between the parties to be one matter of settlement or payment, as payments were made upon the purchases from time to time, and it was not possible to a matter of one settlement, because by law a settlement followed each separate delivery and would have warranted an immediate action for the recovery of the purchase price of the lumber thus delivered.  This legal position, not having been in any manner changed or altered by contract, must stand.  There was no unity of contract with the plaintiff for the purchase of lumber with which to erect this entire building and to complete it, as a whole.  This furnishing was under an implied contract. (*Harwood* v. *Bromwell*, 32 Ill. App. 347; *Capron* v. *Stout*, 11 Nev. 312.) The legal position, we take it, is well defined; and as to those items which were furnished prior to February 15, 1907, this lien claim was not filed within the statutory time, and there cannot here be any joining of this prior furnishing and such as was done in April. (*Central Trust Co.* v. *Chicago R. Co.*, 54 Fed. 598; *Pac. Manfg. Co.* v. *Brown*, 36 Pac. 273; *Spencer* v. *Barnett*, 35 N. Y. 94; *Miller* v. *Hoffman*, 26 Mo. App. 199; *Hettzell* v. *Railroad Co.*, 77 Mo. 315; *Livermore* v. *Wright*, 33 Mo. 31; *Frankoviz* v. *Smith*, 34 Minn. 403; *Watts* v. *Whittington*, 48 Md. 353; *Gilbert* v. *Tarp*, 72 Iowa, 714.)

II.  The learned counsel assume so many different posi-

tions that it is hard to follow them and difficult to ascertain just what their position is, and it seems to us that they are "grasping after straws," and hope to land from any old position. We find them pleading "abandonment" as the inception of the right of their lien claim, but contending that it dated from May, 1907, now realizing the infirmity of their position that the prior furnishing and that commenced April 27th can be joined and held continuous under the proven method of furnishing. We find them now "switching" and contending that because the plaintiff has been guilty of laches this court should come to their rescue and make a decision simply to fit their troublesome condition, and relieve their client in a case in which it is not entitled to relief under liberal construction, or any other construction, of the mechanics' lien law.

III. This plaintiff is claiming a right here by reason of a compliance with the law, with a statute creating the right and laying down certain material things which must be done to create the right. None of these essential elements can the court dispense with, and under our law one of these things is a correct statement of the terms, time given and conditions of the contract, therefore, no matter how just, how much entitled to a lien on compliance with the law, the converse of the proposition is true and applies, and that is that a failure to truthfully state these elements is sufficient to invalidate the lien. Here this referee, after his attention was specifically called and directed to this matter, both in the objection of the finding and by the oral argument on the motion for a new trial, so that a correction could be made, if warranted, still adheres to the position that it was a fact, and it now stands as a fact in this case, and will be taken as true by this court, from said finding if it be permitted to stand, that it was not true as stated by the plaintiff as to his contract under which he furnished the material which was furnished, that it was done upon an implied contract, and that the lien is not true when it shows an implied contract as the contract under which this furnishing was done. It will not do to say the referee simply used a misnomer and confused an implied and express contract, as he did nothing of the kind,

but retained the finding after a full and complete argument pointing out the difference between the contracts. Such being the case, this lien must fail regardless of any or all knowledge on the part of Walsh or Easton, and it is not the law, as contended for by counsel, that it is immaterial what the contract was. They can hardly stretch "liberal construction" to that extent. There comes a point at which it must break, when stretched too far, and this just about reaches the limit. Plaintiff's theory and contention is completely exploded by the late case and expression of this court on the subject found in *Porteous Decorative Co.* v. *Fee*, 29 Nev. 375, which no statement from us could make more weighty. The same is a correct exposition of the law of this case and of this state, and a correct construction of our statute.

IV. The rule has been laid down by our court, as well as others, and must be followed, and as said in *Dalton* v. *Dalton*, 14 Nev. 426: "It was the duty of the court below to give it its full value, and our duty is the same. (*Sherwood* v. *Sissa*, 5 Nev. 355; *McCloud* v. *O'Neall*, 16 Cal. 397.)" We have, therefore, made sufficient proof of the negative to compel plaintiff to show a contrary state of facts before this court will hold that this plaintiff has shown the requisite knowledge to exist on the part of these defendants to bind them and hold them and their property interests here for the acts of other parties. Peer and Hopkins both state positively that they communicated nothing regarding this second furnishing, nor in regard to the contract to finish up this room, to either Walsh or Easton. There can be no presumption indulged in this matter against Walsh or Easton, but there can be a presumption in their favor. Their rights are not to be sequestered and made to respond to this plaintiff's claim except unequivocal proofs show that they were obliged to become actors in regard to the giving of this notice in regard to work done on this room, after having obtained knowledge thereof. If the dependence of the plaintiff, for its rights of recovery here against Walsh and Easton, is to be placed upon the fact of existing knowledge upon their part, then it is its duty to substantiate their claim.

By the Court, SWEENEY, J.:

This is an action brought by the Tonopah Lumber Company, a corporation, plaintiff, against the Nevada Amusement Company, a corporation, William Easton, P. Walsh, G. W. Peer, C. W. Hopkins, the Peer-Hopkins Company, R. E. Waugh, R. M. Henningsen, and the Western Engineering and Construction Company, defendants, to foreclose a material-man's lien filed against the property of the defendants. Under a stipulation between counsel for both parties Mr. Thomas F. Flannigan was appointed referee to take the evidence regarding the claim of the Tonopah Lumber Company against said defendant. It appears from the transcript that there were other liens filed by the Western Engineering and Construction Company, the Nevada Power Company, and the Goldfield Lumber Company, and other minor claimants, all of which were settled by Messrs. Walsh and Easton, who were made defendants, as owners of the lands and premises upon which the building was erected. The referee appointed by the court, after hearing the evidence in support of the claim of the plaintiff, the Tonopah Lumber Company, rendered his findings in favor of the demands of said company, less $403.20 offsets, which the court adopted as its findings of fact, and upon which judgment was duly entered by the district court of Esmeralda County; and this appeal is taken by the defendants William Easton and P. Walsh from said judgment, and from the order of the court denying their motion for a new trial.

It appears from the evidence that Ray B. Cox, collector and solicitor of the Tonopah Lumber Company, which furnished the materials to the Nevada Amusement Company, lessee of the land upon which the building, in which the materials were used, was erected, through Waugh and Henningsen, contractors for said lessee, in answer to the following queries, testified:

"Q. What I want to know is whether there was any special time that you should deliver, or a limitation when you should deliver, a certain amount of lumber, during the construction of the building? A. There was no understanding as to the

quantity of lumber we were to deliver to them, except that amount which Mr. Waugh and Mr. Henningsen saw fit to order, and we were to deliver that as soon as possible after we received the requisition for the same.

"Q. In other words, there was no entire contract for 200,000 or 1,000,000 feet, or any definite quantity? A. There was never a specific quantity to be delivered to them, except the orders from day to day.

"Q. As the order would come into the office, it would be filed and the lumber delivered? A. Exactly.

"Q. O. K.'d as you have stated? A. O. K.'d by them, and paid by the parties who saw fit.

"Q. Did you ever have any direct orders from the Nevada Amusement Company, or did they come through Waugh and Henningsen or their agents—do you know? A. The Nevada Amusement Company never gave us any orders directly for lumber. They always came through Waugh and Henningsen or their agents, as far as I know."

It appears from the evidence that the Nevada Amusement Company, owing to strikes in Goldfield and the stringency of the money market, ceased work on the building on the 15th day of February, 1907, and on that date all the men were discharged, and their wages paid to them. It appears that on the 27th day of April, 1907, the Nevada Amusement Company had an opportunity to let a room in the uncompleted building to the Nevada-California Power Company, and proceeded to finish said room, in order to do so, according to the original plans and specifications for said building. It is claimed by appellants that after the cessation of work on the 15th of February, 1907, which is insisted to be an abandonment of the contract, Easton and Walsh, who live at and near Austin, Lander County, on the 1st day of March, 1907, came to Goldfield, and at that time knew the work and labor, and the use of material, had entirely stopped, and the completion of the building abandoned, the men discharged, and that nothing further was contemplated being done leading to its final completion; that these gentlemen were never informed of the intention of the Nevada Amusement Company to fix up the room for the Nevada-California Power Company, and

that they had no knowledge whatever of the intention to have this work and furnishing done, or of its being done, or of the fact of the furnishing of any lumber therefor by the Tonopah Lumber Company, and that Walsh and Easton cannot be held responsible for this lien filed by plaintiff, because this work and material furnished cannot be considered as having been delivered in pursuance of the original contract, which, appellants contend, under the evidence, is not a continuous contract, but that each delivery of lumber became a separate completed contract, upon which a separate and immediate right of action arose, and that the lien is invalid, because not filed within the time limitations, as required by the statute of Nevada.

The following rule as to a continuing contract is concisely stated in 20 Am. & Eng. Ency. Law, 2d ed. 359, and we believe it is applicable to the evidence and findings disclosed in this case: "Where materials are furnished from time to time, as they are ordered, upon a running account, and the material was ordered and furnished upon an understanding from the parties from the beginning that it was to be furnished for the purpose of the construction of the building, and there were reasonable grounds for expectation on the part of the material-man that the material would be ordered, from time to time, to finish the building, the material will be deemed to have been furnished under an entire and continuing contract." And Mr. Phillips, in his work on Mechanics' Liens, sec. 229, says: "When work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole or are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract." See, also, *Miller* v. *Batchelder*, 117 Mass. 179, and *Union Trust Co.* v. *Casserly*, 127 Mich. 183, 86 N. W. 545.

The transcript discloses a conflict in the evidence as to whether or not the work, which stopped on February 15, 1907,

was an abandonment or merely a suspension or cessation of
the work until further funds could be raised to complete the
building.    Mr. Waugh, of the contracting firm of Waugh &
Henningsen, who had full charge of the construction of the
building, and who was authorized to order such lumber or
material as would be necessary, among other matters in con-
nection with this case, testified as follows: "That made a
question with me — what abandonment consists of.    We
expected to begin on that very day.    For a month from the
time they stopped work we have been expecting to begin
work on it, every day for a month after we stopped working;
so don't consider it was abandoned until it ran on such a
length of time, and we knew the financial state of the coun-
try was in such shape that they could not get funds to resume,
then we considered it abandoned, and started process to
recover." And again he says, "they expected to go ahead with
the building"; and "they asked us to hold off, and it was put
off from day to day." It is also agreed by parties in the
record to be the fact that neither Waugh nor Henningsen
was ever formerly discharged by any of the parties inter-
ested in this proceeding.

In view of the foregoing testimony, after considering all
the evidence disclosed by the record, this court feels that the
referee was fully warranted in making the following finding,
later approved and adopted by the lower court, and in con-
sonance with its repeated decisions this court will not vary a
finding of fact where there is substantial evidence to support
it: "That by reason of the failure and inability of G. W.
Peer and C. W. Hopkins and their successors in interest, the
Peer-Hopkins Company and the Nevada Amusement Com-
pany, to secure funds to prosecute the work in the erection
of said building, there was a cessation of work on said build-
ing, on or about the 15th day of February, 1907, at which
time there remained to be done, to make the building ready
for occupancy, the placing of window frames with windows,
lathing, plastering, plumbing, steam-heating plant, painting,
and glazing, as called for in the original plans and specifica-
tions; that on or about the 27th day of April work was
resumed on said building, by way of finishing one room,

17x20, in ground floor, which room was finished May 3, 1907, and which work of finishing was done under the direction of R. E. Waugh, and R. M. Henningsen, and said Western Engineering and Construction Company, and said room was so finished for the purpose of renting to the Nevada-California Power Company, a tenant of said Nevada Amusement Company."

The evidence indisputably shows that the material supplied by plaintiff up to and including May 2, 1907, was actually used in the construction of the building upon the lands of defendants Walsh and Easton, and that the same was never paid for; that plaintiff was not in any way to blame for the cessation of work, nor ever ordered to cease supplying material, nor aware of any intention not to complete the building, and that the record clearly sustains the following finding of the referee: "That said Patrick Walsh and William Easton failed, within three days after they had obtained knowledge of the construction, alteration, or repair, or intended construction, alteration, or repair of said building, to give notice that they would not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land or upon the building or other improvement situated thereon, nor did they give such notice at any time."

The seventh paragraph of plaintiff's complaint reads: "That William Easton and P. Walsh are the owners of said lot of land, and the lessors thereof to the said Nevada Amusement Company, and know, and at all times knew, that said lessee was building and constructing the said building upon said lots of land, and never, at any time, gave notice by posting in writing upon said lots of land or said building, in a conspicuous place or otherwise, that they would not be responsible therefor." This allegation sufficiently charges said defendants with knowledge, and is not denied anywhere in their answer. This court has repeatedly held that a "lien can only legally exist when perfected in the manner prescribed by the statute creating it, and, being a statute of a remedial nature, we believe should be liberally construed, and that a substantial compliance with the law is sufficient to

create a valid lien. (*Skyrme* v. *Occidental M. & M. Co.*, 8 Nev. 221; *Hunter* v. *Truckee Lodge*, 14 Nev. 28; *Lonkey* v. *Wells*, 16 Nev. 274; *Maynard* v. *Ivey*, 21 Nev. 245.)" See, also, *Porteous Dec. Co.* v. *Fee*, 29 Nev. 380.

Section 3881 of the Compiled Laws concerning liens provides:

"Every person performing labor upon, or furnishing material of the value of five (5) dollars or more, to be used in the construction, alteration or repair of any building or other superstructure, * * * has a lien upon the same for the work or labor done, or material furnished by each, respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent."

And section 3889 thereof also states:

"Every building or other improvement mentioned in section one of this act, constructed upon any lands with the knowledge of the owner, or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming an interest therein, shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land or upon the building or other improvement situate thereon."

And the act of March 6, 1903 (Stats. 1903, p. 51, c. 32), provides as follows:

"* * * And every person, save the original contractor, claiming the benefit of this chapter, must, within fifty days after the completion of any building, improvement or structure, or after the completion of the alteration or repair thereof * * * file for record with the county recorder of the county in which the property or some part thereof is situated, a claim containing a statement of his demand, after deducting all just credits and offsets, with the name of the

owner or reputed owner, if known, and also the name of the
person by whom he was employed or to whom he furnished
the material, with a statement of the terms, time given, and
conditions of his contract, and also a description of the prop-
erty to be charged with the lien, sufficient for identification,
which claim must be verified by the oath of himself or some
other person."

Reviewing the transcript, and the law applicable thereto,
as we construe it, we are of the opinion that the plaintiff's
furnishing of material on the resumed construction of the
building, on the 27th day of April, 1907, is legally a con-
tinuation of the original contract for the construction of the
building; and, as the last work was done on May 2, 1907,
and the lien was filed on June 6, 1907, within the fifty days
prescribed by law, the judgment and the order of the lower
court overruling the motion for a new trial must be affirmed.
(*Valley L. & M. Co.* v *Driessel*, 93 Pac. 765, 13 Idaho, 662;
*Darlington L. Co.* v. *Harris*, 107 Mo. App. 148, 80 S. W. 688;
*Fitzgerald* v. *Walsh*, 107 Wis. 92, 82 N. W. 717, 81 Am. St.
Rep. 824.)

The judgment and order appealed from are affirmed.

ON PETITION FOR REHEARING.

*Per Curiam:*

Petition for rehearing denied.