CLARK, Appellant, vs. SMITH and another, Respondents.

*February 13—March 12, 1940.*

*Edward Meyer* of Manitowoc, for the appellant.

*John R. Cashman* and *John C. Danielson,* both of Manitowoc, for the respondents.

MARTIN, J.   The facts are not in dispute.   The errors assigned relate to conclusions of law.   The material facts are in brief as follows: In the fall of 1937 plaintiff and defendants entered into an express oral agreement by the terms of which defendant architects agreed to prepare plans and specifications for a house which plaintiff contemplated building in a high-class residential district in the city of Manitowoc. The parties agreed that plaintiff was to pay defendants six per cent of the cost of construction for completed plans and specifications and for superintending construction.   It was further agreed that in the event plaintiff did not see fit to have defendants do the superintending, they were to receive as their fee four per cent of the cost of construction.   It was further agreed that in the event the house was not constructed, plaintiff was to pay defendants for their services for drawing the plans and specifications four per cent of the total of the lowest bids.

Plaintiff showed defendant Brandt a picture of a Georgian house, and stated that he wanted a house similar, stating in detail what he wanted.   The plaintiff outlined to defendant Brandt certain items that he wanted in the plans

and specifications, enumerating, among others, a tile roof, a certain kind of heating system, a sprinkling and cooling system, and three and one-half bathrooms. Prior to the time of receiving bids nothing was said by either party to the other as to the limit or extent of the cost of the completed house. On several occasions during the course of the preparation of the plans and specifications, Brandt suggested to plaintiff less expensive materials than those requested by plaintiff, to which suggestions plaintiff replied that he did not want to cheapen the impressive appearance of the house.

When the final plans and specifications were completed by defendants, same were approved by plaintiff. Bids were called for and received on January 29, 1938. The sum total of the lowest bids received at that time was $18,893. This was higher than plaintiff had anticipated. He thereupon requested defendant Brandt to make certain revisions in the plans and specifications. When they were revised, bids were again called for and received on February 12, 1938. The sum total of the lowest of the second bids received was $17,925. After considering the new bids for several days, plaintiff for the first time informed defendants that he would not construct a house which would cost more than $12,000. Plaintiff then requested Brandt to revise the plans and specifications for a home to cost about $12,000, and outlined the kind of a house he wanted, based upon the kind and style as originally planned, but smaller in size and eliminating some of the more expensive items. At this time defendant Brandt informed plaintiff that it would be impossible to construct a house of the kind and style he wanted for the sum of $12,000. The trial court specifically found "that it would have been impossible for defendants or any other architect to attempt to redraft or revise the plans and specifications to keep the cost of the house at about $12,000." The court further found "that an entirely new set of plans and specifications would be made necessary in the attempt to reduce the cost of

construction to bring it within the limits fixed by the plaintiff." The plaintiff thereupon secured the services of another architect who did not use defendants' plans and specifications.

The court further found that under the facts and circumstances of this case, it was not the duty of the defendants to ask plaintiff how much he wanted to spend in the construction of the house before preparing plans and specifications; that defendants' part of the agreement was fully performed at the time plaintiff rejected all bids and informed defendants that he would not construct a house costing in excess of $12,000; that prior to this time plaintiff had paid defendants on account for their services the sum of $300; and that the amount due defendants was four per cent of $17,925, the total of the lowest bids received, plus $50 for revising the plans and specifications after rejection of the first bids, less the sum of $300 received on account. The court further found that the sum of $50 for revising the plans and specifications was a reasonable amount, and that the net amount due defendants was the sum of $467, plus interest from May 28, 1938.

On March 1, 1938, defendants filed a lien in the office of the clerk of the circuit court for Manitowoc county against the property on which plaintiff proposed building his house. As conclusions of law, the court found that no lien attached in favor of defendants against plaintiff's property, and that defendants were entitled to judgment on their counterclaim against plaintiff in the sum of $467, plus accrued interest in the sum of $28.02 with costs.

Plaintiff contends that the court erred, (1) in finding that it was not the duty of the defendants to ascertain from the plaintiff the amount of money he was willing to spend on his house before drafting the plans and specifications for same, and (2), in finding that defendants' part of the agreement was fulfilled at the time plaintiff rejected the bids as being

too high. It is conceded that the original plans and specifications as prepared by defendants were accepted and approved by the plaintiff before the first bids were called for. When the bids were received, they apparently exceeded his expectations. Thereupon, certain revisions were made in the plans and specifications at plaintiff's directions. Thereafter, new bids were called for and again the plaintiff was disappointed. However, he still wanted the kind of house originally selected—with some changes in size and eliminating some of the more expensive features; but he would not spend more than about $12,000. The court found that it would have been impossible for defendants or any other architect to redraft or revise the plans and specifications to keep the cost of the house at about $12,000; also that an entirely new set of plans and specifications would be necessary in order to reduce the cost of construction to bring it within the limits fixed by plaintiff. No contention is made by plaintiff that these findings are not supported by the evidence; but plaintiff argues that he had the right to reject any and all bids which he considered too high. This is conceded. He had the right to conclude not to build at all, but in that event, his contract with defendants specifically provided that they were to receive four per cent of the total cost of the lowest bids. When plaintiff decided that he would not build if the cost exceeded $12,000, thus requiring a new set of plans and specifications, defendants demanded that they be paid for the original plans and specifications, as revised, on the basis of four per cent of the total of the low bids received.

Under the particular facts of this case, we find no merit in the contention that it was the duty of the defendants to inquire at the outset the amount of money plaintiff was willing to spend on his proposed house. He had selected the particular kind and style of house he intended building. He was a man of business experience, had building experience in connection with his business, and was also a man of financial

ability able to pay for a house of the kind and style he had selected. Defendants did not refuse to render further architectural services to the plaintiff. When, because of plaintiff's decision not to build unless he could get the kind and style of house he wanted at not to exceed $12,000, it became necessary to prepare a new set of plans and specifications, defendants insisted upon a new agreement before proceeding further. They were then entitled to the agreed compensation for the original revised plans and specifications.

Upon the conceded facts, we are of the opinion that this case is governed by the law as established in *Hand v. Agen,* 96 Wis. 493, 71 N. W. 899, and *Fitzgerald v. Walsh,* 107 Wis. 92, 82 N. W. 717. Both cases involved architectural services and the architect's right to recover. In the former case, at page 497, the court said:

"There seems to have been no connection nor relationship between the plans and specifications for the two-story building, which the defendant never constructed, and the plans and specifications of the three-story building, which he did construct, unless it be that the latter was located at the same place where the defendant had intended to locate the former. We think the trial court properly treated the two sets of plans and specifications, respectively, as applying entirely to different buildings. There does not appear to be any evidence that the plans and specifications not used lessened the work upon or the value of the plans and specifications which were used."

In *Fitzgerald v. Walsh, supra,* at page 96, the court said:

"Respondent did not agree to make all plans and specifications appellant might order in contemplation of the construction of a building, but to make plans and specifications for the proposed building. The only reasonable, sensible construction of that language is that it called for one set of acceptable plans and specifications. That being satisfied, the acceptance of an order for another set was neither within, nor a mere extra, incidental to, the original contract.

"The accepted order for the second set of plans was rightly decided by the trial court to constitute a new contract having

no relation to the work under the written contract, and not governed thereby except as to the price for the new work. Nothing having been said about compensation therefor, it was fair to presume, as the trial court did, that both parties contemplated that it would be paid for at the same rate as the original work of the same nature, called for by the writing."

In the instant case defendants prepared plans and specifications for the particular style and kind of house plaintiff wanted to build. He accepted the plans and specifications. When bids were received which were in excess of the amount he had anticipated, he directed defendants to make certain revisions in the plans and specifications, which they did. When bids were received the second time, they were again in excess of the amount plaintiff wished to spend. Plaintiff then set a definite limit of $12,000 as the cost of construction of his proposed Georgian house. Plaintiff makes no contention here that it would not be necessary to draft a complete new set of plans and specifications in order to keep within his limit on the cost of construction. What is said above in *Hand v. Agen* and in *Fitzgerald v. Walsh, supra,* is in point and controlling.

As to the lien filed by defendants, no construction of the house having been begun, no lien could attach. See *Fitzgerald v. Walsh, supra,* at page 97, and sec. 289.01, Stats.

*By the Court.*—Judgment affirmed.